UNITED STATES, Appellee

v.

JEWELES ISENBERG, Private–2, U. S. Army, Appellant

2 USCMA 349, 8 CMR 149

No. 579

Decided March 25, 1953

David R. Kaplan, Esq., and 1st Lt Richard M. Hartsock, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

This petition was granted in order that we might determine whether evidence establishing the offense of absence without leave is sufficient to constitute the corpus delicti of desertion, in order to form a basis for a proper consideration of accused's confession of the latter offense.

Accused was tried by general court-martial in Korea for desertion with intent to remain away from the service permanently. He was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for a period of thirty years. The convening authority reduced the period of confinement to twenty years and approved the findings and the sentence as reduced. The board of review in the office of The Judge Advocate General, United States Army, affirmed and we granted accused's petition for review.

At the trial the testimony of a company officer and an extract copy of a morning report constituted the only evidence presented by the Government independently and apart from the confession of the accused. Lieutenant Wright, who was accused's company commander, testified that on October 22, 1951, he received a report that appellant was absent; that acting pursuant to the report, he made a search of the company area in an attempt to locate accused but failed to find him; that he next saw the accused in the orderly room on November 4, 1951; that he had not given him permission to be absent from the company; and that to his knowledge no one else had granted such permission. Thereafter, the prosecution presented the extract copy of a morning report showing that accused was absent without leave from October 22, 1951, to November 1, 1951, and then introduced the confession in evidence.

When the confession of the accused was offered, defense counsel interposed an objection to its admission contending that there was no showing as to its voluntariness. The law officer overruled the objection, and the confession was received. It was as follows:

"I Pvt Jeweles Isenberg, RA 16260436 left Company B, 15th Inf Regt on 22 of October 1951 heading for Pusan. I was trying to get back to the States, I had no intention of coming gack to Co 'B', 15th Inf Regt. at any time."

There is no doubt that the evidence,

350

including the confession, supports the finding of guilty of desertion as returned by the court-martial. Likewise there is no doubt that, if the confession is excluded from consideration, there is evidence which would only support a finding of guilty of absence without leave. This then narrows the issue to the single question which was the basis of our grant.

It is a cardinal principle of law that a conviction may not be sustained unless there is some evidence corroborating any admissions or confessions made by the accused. The weight of this independent evidence, however, has posed the problem. The holdings, as to how far it must go, vary from a requirement that the evidence may be of any sort whatever which might prove the truthfulness of the confession, to the requirement that some evidence of each element of the offense charged be shown. Wigmore, Evidence, 3d ed, § 2070, page 394. A study of the Federal cases and provisions of the Manual for Courts-Martial, United States, 1951, shows an apparent transition from the former to the latter.

One of the early leading Federal cases which has been cited repeatedly in military cases is United States v. Daeche, 250 F 566, decided by the Circuit Court of Appeals, Second Circuit, in 1918. It appears to support the concept that any evidence which will support the truthfulness of the confession is sufficient corroboration. That case involved charges of conspiracy to commit sabotage upon ships of the allies carrying munitions to Europe. Judge Learned Hand, speaking for the court, explained the different views prevailing at that time as follows:

". . . . We start therefore, with the assumption that some corroboration is necessary, and the questions are to what extent must it go, and how shall the jury deal with it after it has been proved. The corroboration must touch the corpus delicti in the sense of the injury against whose occurrence the law is directed; in this case, an agreement to attack or set upon a vessel. Whether it must be enough to establish the fact independently and without the confession is not quite settled. Not only does this seem to have been supposed in some cases, but that the jury must be satisfied beyond a reasonable doubt of the corpus delicti without using the confessions, before they may consider the confessions at all. Gray v. Com., 101 Pa 380, 47 Am Rep 733; State v. Laliyer, 4 Minn 368 (Gil 277); Lambright v. State, 34 Fla 564, 16 So 582; Pitts v. State, 43 Miss 472. But such is not the more general rule, which we are free to follow, and under which any corroborating circumstances will serve which in the judge's opinion go to fortify the truth of the confession. Independently they need not establish the truth of the corpus delicti at all, neither beyond a reasonable doubt nor by a preponderance of proof. U. S. v. William, supra; Flower v. U. S., supra; People v. Badgley, 16 Wend (NY) 53; People v. Jaehne, 103 NY 182, 199, 8 NE 374; Ryan v. State, 100 Ala 94, 14 So 868; People v. Jones, 123 Cal 65, 55 P 698."

This case seems to have set the pattern for the various Federal Circuit Courts until the United States Court of Appeals for the District of Columbia in Forte v. United States, 94 F2d 236 (1937), announced a different standard. There the appellant was charged with transporting a motor vehicle from the District of Columbia to Maryland knowing it to have been stolen. There was no evidence aliunde the confession tending to show that accused had any knowledge it was stolen property. The court stated as follows:

". . . . there can be no conviction of an accused in a criminal case upon an uncorroborated confession, and the further rule, represented by what we think is the weight of authority and the better view in the Federal courts, that such corroboration is not sufficient if it tends merely to support the confession, without also embracing substantial evidence of the corpus delicti and the whole thereof. We do not rule that such corroborating evidence must, independent of the confession, establish the corpus delicti beyond a reasonable doubt. It is sufficient, according to

the authorities we follow, if, there being, independent of the confession, substantial evidence of the corpus delicti and the whole thereof; this evidence and the confession are together convincing beyond a reasonable doubt of the commission of the crime and of the defendant's connections therewith."

That rule was followed in Ercoli v. United States, 131 F2d 354 (CA DC Cir) (1942) where the defendant was convicted of negligent homicide. The evidence showed that he had caused the death of a human being by wrongful operation of a motor truck. However, the required element that he had operated the truck at an immoderate rate of speed or in a careless, reckless or negligent manner was not shown by any evidence apart from his confession. There the court said:

"Briefly stated the rule of the Forte case is that (1) there can be no conviction of an accused person in a criminal case upon an uncorroborated extrajudicial confession; (2) *such corroboration is not sufficient if it tends merely to support the confession without also embracing substantial evidence touching and tending to prove each of the main elements or constituent parts of the corpus delicti*: (3) however, such corroborating evidence need not, independent of the confession, establish the corpus delicti beyond a reasonable doubt; (4) if there is substantial evidence of the corpus delicti, independent of the confession, and the two, together, are convincing beyond a reasonable doubt of a defendant's guilt, that is sufficient. . . ." [Italics supplied]

While the Daeche case may well represent the weight of authority in the Federal circuit courts, the Forte and Ercoli cases are the most recent pronouncements. There being a variation in the Federal civilian courts, we turn to the military authorities to determine how they have disposed of the problem. The earlier cases embrace the Daeche rule while the later ones seem more consistent with the Forte principles. Likewise, the Manual provisions, until the 1951 Edition, appear to announce the

352

doctrine of the earlier authorities but the changes found in that edition suggest an attempt to declare the law to be that spoken by the Circuit Court of Appeals for the District of Columbia.

In the Manual for Courts-Martial, U. S. Army, 1921, the following provision appears:

"(c) *At some time during the trial, corroborating evidence must be introduced either direct or circumstantial, outside of the confession itself, that the crime charged has been committed.* This is what is technically known as the rule requiring proof of the corpus delicti; that is, some proof of the fact that the crime charged has probably been committed by someone, so that there will be some corroboration of the confession. . . . It is not requisite that this outside evidence constituting proof of the corpus delicti shall be sufficient to convince the court beyond a reasonable doubt of the guilt of the accused, *nor need it cover every element contained in the charge.* For instance, *where desertion is charged proof of absence without leave would be considered as proving the corpus delicti;* where the charge is that a sentinel had left his post before being regularly relieved it would be sufficient to prove that he was not on his post during his period of duty; where a homicide is charged the proof of the death of the person charged to have been killed amounts to proof of the corpus delicti; and in cases of larceny and selling clothing the fact that the property alleged to have been stolen or sold was missing is sufficient proof." [Italics supplied]

Paragraph 114 of the Manual for Courts-Martial, U. S. Army, 1928, expressed the rule in different language, and it is worthy to note that the illustration of the proof of absence without leave being considered as sufficient proof of the corpus delicti of desertion was deleted. That particular paragraph provided:

"An accused cannot be convicted legally upon his unsupported confession. A court may not consider the confession of an accused as evidence

against him unless there be in the record other evidence, either direct or circumstantial, that the offense charged has probably been committed; in other words, *there must be evidence of the corpus delicti other than the confession itself.* . . . *This evidence* of the corpus delicti *need not be sufficient* of itself to convince beyond reasonable doubt that the offense charged has been committed, *or to cover every element of the charge,* or to connect the accused with the offense. . . . ." [Italics supplied]

In the Manual for Courts-Martial, U. S. Army, 1949, the language was modified by providing that the corroborating evidence must be substantial but the rule was otherwise unchanged. Paragraph 127a provided as follows (page 159):

"An accused cannot be legally convicted upon his uncorroborated confession. A court may not consider the confession of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged has probably been committed; in other words, *there must be substantial evidence of the corpus delicti other than the confession.* Other confessions or admissions of the accused are not such corroborative evidence. . . . *This evidence* of the corpus delicti *need not be sufficient* of itself to convince beyond reasonable doubt that the offense charged has been committed, or *to cover every element of the charge, or to connect the accused with the offense.* . . . ." [Italics supplied]

Before proceeding to the changes made by the 1951 Manual, we prefer to refer to some of the military cases. It is difficult to determine why they were not decided by applying literally the language of the Manuals unless it is because of certain inconsistencies therein. There are a few references to the rules stated in the various editions of the Manuals. But a cursory review of these provisions will establish that, over the years, it has traditionally been stated, "while the independent evidence need not establish all of the elements of the corpus delicti," the tests applied by boards of review have brought about different results. The following cases decided during the period 1934 to 1948 are illustrative of the manner in which the rule has been discussed and applied.

In 1934, a board of review in United States v. Mallon, 6 BR 1, affirmed a conviction on certain incriminating circumstances and founded its decision on the Daeche rationale. The opinion stated:

"The authorities above quoted are believed sufficient to show both the general rule of law followed by the federal courts and the manner of its application. Other cases illustrative of the rule are United States v. Boese, 46 F 917; Naftzger v. United States, 200 F 494; Bolland v. United States, 238 F 529; Cohen v. United States, 288 F 835; Mangum v. United States, 289 F 213; .Litkofsky v. United States, 9 F (2d) 877; Forlini v. United States, 12 F (2d) 631; Wynkoop v. United States, 22 F (2d) 799; Aplin v. United States, 41 F (2d) 495; Wiggins v. United States, 64 F (2d) 950. The general rule, laid down with the greatest clearness in the Daeche case, is that the corpus delicti need not be proved aliunde the confession beyond a reasonable doubt or by a preponderance of evidence or at all, but that some evidence corroborative of the confession must be produced and such evidence must touch the corpus delicti. . . . ."

Thereafter in 1938, another board of review in United States v. Alexander, 9 BR 331, affirmed a conviction by following the Mallon holding. The board in that case stated:

"What then is the rule with respect to proof of the corpus delicti as a prerequisite to the admission of a confession? It was thus stated eighty years ago in the charge to the jury in the trial court in United States v. Williams (1 Clifford 5, Fed Case No. 16707):

' "It is true that in our jurisprudence the accused cannot be convicted on their own confessions, without some corroborating proof of the cor-

pus delicti. There must be some proof that the crime has been committed independent of the confessions, but it is not necessary that it should be plenary proof. There must be evidence tending or conducing to prove the fact; and if it has that tendency, it is proper to be submitted to a jury, and if not, it ought to be excluded as irrelevant." ' "

In United States v. Jones, 25 BR 41 (1943), a board of review was considering several specifications alleging unlawful cohabitation, adultery, and falsely representing that a certain woman was accused's wife. The evidence aliunde his confession showed that he had introduced a certain woman as his wife and had lived with her for a period of time. In his confession he stated that she was not his wife. The principle announced was stated in the following language:

"The accused cannot legally be convicted upon his unsupported confession. There must be, in the record, other direct or circumstantial evidence that the offense charge probably has been committed (MCM 1928, par 114a). The general rule which has been stated and applied by the board of review in numerous cases is that while the corpus delicti need not be proved aliunde the confession beyond a reasonable doubt or by a preponderance of the evidence or at all, nevertheless some evidence must be produced to corroborate the confession and such evidence must touch the corpus delicti (CM 202213 Mallon; CM 220604 Antrobus; CM 237225 Chesson; and CM 237450 Ivy). In CM 193828 Morandi and Mingo, the Board quoted with approval the following language from Daeche v. United States (CCA2nd) 250 Federal 566; 'The corroboration must touch the corpus delicti in the sense of the injury against whose occurrence the law is directed; in this case, an agreement to attack or set upon a vessel'."

However, in applying the principle announced in the foregoing quotation, the board of review said:

"The several Specifications of the Charges now under consideration allege that accused falsely presented and introduced as his wife, Mrs. Blasco, who was not in fact his wife, lived with her in a rented room as husband and wife and cohabited with her in a state of open adultery. The gist of all of these offenses is that Mrs. Blasco was not the wife of accused. Without that element the other facts alleged in the Specifications constitute no offense at all. There is no competent evidence in the record other than the confession of accused, touching or tending to prove that essential element of the corpus delicti. . . . ."

This opinion adopts the language of the previous quoted military cases but as we view the facts quoted in the decision, the board of review does not apply the test in the same manner. Be that as it may, some, if not all, of the later cases use the Manual language as the basis for their measuring rod and they measure the evidence to determine whether it shows the probable commission of the offense charged.

In United States v. Guangco, 74 BR 125 (1948), the accused was charged with willfully suffering military property belonging to the United States to be wrongfully disposed of by sale to unknown persons. The board of review stated:

"Proof adduced by the prosecution established that on or about the date alleged property similar to that described in the specification was missing from the 'A' Motor Pool at Camp Batangas, P. I. The accused was a member of the guard detail to safeguard such property. In a pretrial confession, which the court-martial concluded was of a voluntary nature, the accused admitted that on or about the date alleged he willfully suffered government property similar to that described in the specification to be unlawfully disposed of by sale to unknown persons. Irrespective of whether a wrongful sale or a willful suffering of a wrongful sale is alleged, it is obvious that a wrongful sale is involved in the corpus delicti of either offense. Therefore, in order to sustain a conviction in either case, even though accused has con-

fessed to the offense charged, it must appear, from evidence aliunde accused's confession, that the property in question had probably been unlawfully sold.

"*We find no competent evidence in the record, aliunde accused's confession, tending to establish the probability that the alleged wrongful sale had in fact occurred, thus permitting the confession to be considered.* For a more detailed discussion of the points of law involved, see CM 325377, Sipalay; CM 325378, Catubig; CM 325056, Balucanag." [Italics supplied]

Another example of the Manual rule and its application in a late case is found in United States v. McElroy, 74 BR 321 (1947). There accused was charged with the violation of a regulation prohibiting the operation of a certain type aircraft without the aid of a co-pilot. A pretrial statement of the accused admitted that he had flown the plane and that he was its sole occupant. The board of review, holding the evidence of the corpus delicti was insufficient to permit consideration of the accused's statement, said:

"In the instant case there is no corroborative evidence. The record is void of any evidence circumstantial or direct that the accused was the pilot of the aircraft concerned, that he operated such aircraft in violation of standing orders, or that he was even seen around or about the airfield at the time the alleged offense was committed.

"The mere fact that the plane was found extensively damaged on the field about the time alleged does not touch the corpus delicti of the offense charged, i.e., that accused flew the plane without a qualified person to act as co-pilot. Under the principle announced in the Morande case, supra, the proof outside the confession is insufficient to corroborate the confession. Accordingly, there being no evidence other than the uncorroborated confession as to the probable commission of the offense charged, consideration of the confession by the court was improper and the remain-

ing evidence is not legally sufficient to support the findings of guilty (CM 187168, Greene; CM 188211, Hornsby; CM 193828, Morande, 2 BR 95; CM 325358, Sanborr)."

Although all of the previous military cases were decided during periods when there was a specific Manual provision that the proof aliunde the confession need not cover every element of the offense, it is apparent that the rule has been applied in varying degrees. It, therefore, can hardly be said that a clear-cut, definite and precise rule has been announced by the military authorities over the years. With this apparent uncertainty existing when the new Code was enacted, we consider the effect of the provision found in the present Manual. It states the rule in paragraph 140a, at page 251, as follows:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. A court may not consider the confession or admission of an accused as evidence against him *unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed by someone.* Other confessions or admissions of the accused are not such corroborative evidence. . . . The corroborating evidence need not be sufficient of itself to convince beyond a reasonable doubt that the offense charged has been committed, and it need not tend to connect the accused with the offense. . . ." [Italics supplied]

The present provision does not carry the clause that the corroborating testimony need not "cover every element of the offense charged" and this must have been deleted for some purpose. We, therefore, are not called upon to determine if there is a conflict between this and other provisions found in the previous Manual paragraphs. Moreover, while we might seek to determine the intent behind the deletion, in view of the present state of military law on the subject, we believe it will suffice to lay aside that issue and measure the corroborative evidence by the only test now prescribed in the Manual, that is, that there must be evidence in the record,

aside from the confession, showing that the offense charged has probably been committed by someone. Regardless of whether we apply this rule in the abstract or test it by the evidence in this record, we cannot affirm the finding of guilty in this case. As to an abstract application, evidence of a short absence without leave does not show that the offense of desertion has probably been committed. There is a total absence of facts or circumstances from which an intent not to return to the service may be inferred. Before we could meet the requirements of the Manual and say it is probable the offense charged has been committed, we must find some evidence to support an inference of intent to abandon the service permanently. Mere unauthorized absence of short duration, without more, is not sufficient for that purpose.

When we test the particular evidence we find it wanting in several respects. The reasonable inferences from the facts we have in the record, not considering the confession, suggest that the accused did not intend to remain away permanently. Conceding he left his unit without authority, he returned to it within ten days. Many of the usual elements casting light on an accused's intent are not disclosed. There is no showing as to where the accused in this case went, what he was doing or the distance he travelled while absent. He may have been in either the forward or rear area. The record is silent as to whether he was apprehended or voluntarily returned to military control. In view of this, it must be presumed that he returned of his own accord. His commanding officer testified to his absence, but, in addition, the same officer was the witness who identified the confession and who established that the accused was returned to duty from an absence without leave status. The place of return was the company area which, of course, throws no light on the activities of the accused during his absence. Summed up, we find ten days' unauthorized and unexplained absence as the only fact from which we must find that the offense of desertion was probably committed. Without such a finding the confession cannot be used as evidence.

When we consider the probabilities which might be extracted from these facts, they are weighted in favor of absence without leave and against desertion. This being so, the test prescribed by the Manual for Courts-Martial, United States, 1951, has not been met and the finding of guilty must be reversed.

There is, however, ample support in the record for us to affirm a finding of guilty of absence without leave. This we do and return the record to The Judge Advocate General of the Army with instruction that it be referred to a board of review to reconsider the sentence in the light of our holding.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

Regretfully I concur in the result reached by the majority. I *concur* because I cannot bring myself to disagree with its members that the Manual compels the conclusion they have reached— this despite my feeling that the gulf they envisage really does not separate the Daeche case from the more recent Federal decisions involving Forte and Ercoli. However, I concur *regretfully* because—where a period of unauthorized absence is clearly shown—it seems to me almost absurd to exclude from consideration by the court-martial the very best possible evidence of the intent by which the absence was characterized: the voluntary statement of the accused, himself.

In United States v. Uchihara (No. 60), 2 CMR 29, decided February 4, 1952, a majority of this Court used the following language:

"The rule demanding corroborative evidence or requiring proof of the corpus delicti as foundational to the reception of an extrajudicial confession, seems never to have become rooted in England, and has been the subject of responsible and scholarly criticism in this country. Wigmore, Evidence, 3d ed, § 2070. It has also been received dubiously and followed unwillingly by some American courts. See Daeche v. United States, 250 F 566 (CA2d Cir). It is certainly arguable that both the criminal tribunal

356

and the confessing accused person are afforded adequate protection through a careful and critical administration of the rule demanding volition as a condition to the admission of a confession, which principle has been based on varying theories, clothed in varying verbiage and carried to varying lengths by Anglo-American courts. However, the doctrine requiring corroboration is well established with us, and is certainly an essential and settled part of military law. Manual for Courts-Martial, United States, 1951, paragraph 140a, supra. The question confronting us has to do with the nature and quantum of corroboration commanded."

I agree with my brothers that the Manual now requires that a confession or admission be corroborated by some evidence, direct or circumstantial, that the offense charged has probably been committed—that is, at least *some* evidence bearing on *each element* of the crime alleged. I also agree with them that the record in the case at bar reflects no such support as to the issue of intent to remain away permanently. Uchihara involved a situation vastly different from the one we have before us here. There the accused's unauthorized absence continued for almost ninety days—and this fact, together with others which need not detain us, clearly constituted the necessary "some evidence of probability." In the instant case, and apart from the confession, the only evidence before the court consisted of a mere ten-day absence—with no showing whatever of the circumstances of termination. It seems certain that, if some circumstantial evidence of the probability of an intention to desert is a condition precedent to a reception of the accused's confession, it is not to be found here.

So far as I am concerned, each case in the present area must rest on its own bottom—as we have already had occasion to say in connection with the general problem of evidential sufficiency in desertion cases. United States v. Peterson (No. 199), 3 CMR 51, decided April 17, 1952; United States v. Ferretti (No. 213) 3 CMR 57, decided April 18, 1952. Manifestly, the longer the unauthorized absence, the stronger the suggestion of an intention not to return, and, of course, the presence or absence of other relevant evidential items will affect the outcome in one direction or another.

It must be apparent that I question the desirability of what I am sure the Manual has done. However, we are bound by its terms, and the remedy must lie elsewhere.