UNITED STATES, Appellee

v.

DELFINO VILLASENOR, Airman First Class,
U. S. Air Force, Appellant

6 USCMA 3, 19 CMR 129

Decided June 3, 1955

COL A. W. Tolen, USAF, and CAPT Frank Fedele, USAF, for Appellant.
LT COL Emanuel Lewis, USAF, and MAJ Roger H. Miller, USAF, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted by general court-martial of absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, and larceny in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to a bad-conduct discharge, total forfeitures, and confinement for one year. The convening authority approved, but reduced the confinement to six months, and suspended both the punitive discharge and that portion of the confinement in excess of two months. We granted the petition for review to determine one question which in no way impairs the finding as to absence without leave. The question to be considered is whether the prosecution presented some evidence, independent of the accused's extrajudicial confession, to establish that the offense of larceny had probably been committed. The facts, therefore, must be stated in detail and are not disputed at this level.

The accused normally was detailed as a clerk within a technical training squadron at Sheppard Air Force Base, Texas. During July 1953, he was assigned the duty of collecting funds on behalf of the Dependent Aid Association from various squadron members. A separate collection was made for each pay period, and accused's sole duty from the first to the tenth of each month had to do with the handling of the money and the keeping of records of his collections and remittances. When he first assumed his task, the accused was given full instructions as to the manner in which he was to record and safeguard the monies received, including a specific direction that if it were late in the afternoon at the time he stopped his collections for the day, the money would be placed in an envelope, marked, and placed in the squadron safe.

At the close of business on Friday, April 2, 1954, the accused expressed a desire to the custodian of the keys to deposit his collections in the squadron safe. Witnesses observed him place money in an envelope, seal and staple it, write on its face, "Dep[endent] Aid, $437.00," and deposit it in the safe. When the accused failed to appear for duty on the following Monday, the appropriate unit officials became apprehensive of a possible loss. The envelope, still sealed, and in the same condition as when deposited, was taken from the safe and opened. It was found to contain only $325.00. Upon being returned from his absence without leave, which lasted some twenty-three days, the accused was interrogated by an official investigator at the base. He voluntarily admitted taking over $100.00 for his own use from the funds which he had collected.

It is not denied by defense counsel here that if the confession of the accused was properly before the court-martial, the evidence is sufficient to sustain the conviction. However, it is vigorously contended that the evidence, exclusive of the confession, is insufficient to establish the corpus of the crime of larceny, and, therefore, the confession should not have been admitted.

## II

We are met at the outset by the contention of Government counsel that the time has come to retreat from the rule we announced in United States v.

**5**

Isenberg, 2 USCMA 349, 8 CMR 149. In that case we concluded that the prosecution must present some evidence of wrongdoing, apart from the confession, touching each element of the crime charged, save the identity of the perpetrator, to establish the corpus delicti of the offense. At that time, we exhaustively reviewed both the Federal and military authorities on the question, including the conflicting principles set forth in United States v. Daeche, 250 Fed 566 (CA2d Cir) (1918), and Forte v. United States, 94 F2d 236 (CA DC Cir) (1937). We there carefully considered the holding of the Daeche case, supra, to the effect that any evidence which will support the truthfulness of the confession is sufficient corroboration. But for reasons which will be set forth below, we held, in accordance with Forte v. United States, supra, that there must be, independent of the confession, some evidence of each element of the offense.

Our attention is directed by Government counsel to Opper v. United States, 348 US 84, 99 L ed 104, 75 S Ct 158 (1954). In that recent Supreme Court opinion it was held:

". . . we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. . . . It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth."

We have no difficulty in agreeing with counsel that this holding expressly adopts the rule set forth in United States v. Daeche, supra, and rejects the conflicting holding of Forte v. United States, supra. Indeed, the Supreme Court specifically referred to those lower court opinions by name and characterized them as divergent. Starting with that premise, Government counsel urge that we should repudiate our holding in the Isenberg case, supra, and adopt what is now the Federal law on

the subject. This we do not feel at all free to do.

In United States v. Isenberg, supra, we first set forth the various Federal principles operative in this area, and then turned to relevant military authorities. We sought to show that although earlier opinions and Manual provisions had followed the rationale of the Daeche case, supra, later precedents tended to swing to the rule of the Forte case, supra. This evolutionary process culminated in this provision of the present Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251:

". . . A court may not consider the confession or admission of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed by someone."

In compliance with that provision, we held that in military law a confession or admission must be corroborated by some evidence, direct or circumstantial, bearing on each element of the crime alleged, save only the identity of the perpetrator. That conclusion we believed to be the only one permissible under the language of the Manual, and we have steadfastly adhered to this view. Thus, in United States v. Petty, 3 USCMA 87, 89, 11 CMR 87, 89, we said:

". . . In our recent decision in the Isenberg case, supra, we sought to make plain that present military practice requires, as corroboration of a confession, some evidence tending to establish the probability of the existence of each element of the offense charged—thus adopting, at least in substance, the rule announced in Forte v. United States, 94 F2d 236 (CA DC Cir), and Ercoli v United States, 131 F2d 354 (CA DC Cir)."

In United States v. Landrum, 4 USCMA 707, 711, 16 CMR 281, 285, we supported our prior holdings by stating specifically:

"Military law proscribes a conviction founded solely upon an accused's uncorroborated confession or admis-

sion of guilt. Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251. The record must contain substantial, independent evidence tending to establish the existence of each element of the offense charged. United States v. Isenberg, 2 USCMA 349, 8 CMR 149. This evidence may be either direct or circumstantial. United States v. Petty, 3 USCMA 87, 11 CMR 87."

Similarly, in United States v. Dolliole, 3 USCMA 101, 11 CMR 101; United States v. Manuel, 3 USCMA 739, 14 CMR 157; and United States v. Williams, 4 USCMA 241, 15 CMR 241, we adhered to the principle of United States v. Isenberg, supra, although we were divided as to the application of the rule in the Manuel case, supra.

Only one further important point need be reemphasized in this regard. We have consistently recognized that where a Manual provision does not lie outside the scope of the authority of the President, offend against the Uniform Code, conflict with another well-recognized principle of military law, or clash with other Manual provisions, we are duty-bound to accord it full weight. We have done so on numerous occasions and in various settings. United States v. Lucas, 1 USCMA 19, 22–23, 1 CMR 19, 22–23; United States v. Adamiak, 4 USCMA 412, 422, 15 CMR 412, 422; United States v. Smith, 5 USCMA 314, 321–322, 17 CMR 314, 321–322; United v. Kunak, 5 USCMA 346, 355, 17 CMR 346, 355. Tested by those standards, there is nothing in the Manual itself which is inconsistent with the provision at issue here, this rule does not contravene any portion of the Code, it is not contrary to any long-established military principle, and the President is expressly empowered to prescribe the rules of procedure to be followed by courts-martial, "including modes of proof." Article 36, Uniform Code of Military Justice, 50 USC § 611. It necessarily follows that whatever may be the effect of Opper v. United States, supra, elsewhere, the question is not an open one here.

III

Turning to the problem before us, it is first necessary to delineate the narrow issue presented. ▮▮▮▮▮ For the purpose of establishing both the fact and the amount of the loss, the Government relied upon the writing placed upon the envelope by the accused at the time he placed the funds in the squadron safe. If the writing, "Dep[endent] Aid, $437.00," may be taken as evidence of the amount of money belonging to that Association in the hands of the accused on April 2, 1954, then a comparison with the amount of money physically present in the envelope on April 5, 1954, permits the inference that an unexplained shortage of over $100 occurred, and that the Association suffered that loss. The board of review sustained this conviction upon the theory that the notation made by the accused was prepared in the regular course of his duty and was thus admissible as competent evidence of both the loss and ownership of the funds under the business entry exception to the hearsay rule.

In the current Manual, paragraph 144 c, page 266, we find the following provision:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible as evidence of the act, transaction, occurrence, or event if made in the regular course of any business and if it was the regular course of such business to make such memorandum or record at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter."

This, then, is the "business entry" exception as it exists in military law today, and the draftsmen of the current Manual noted that it accorded with both the Manual for Courts-Martial, U. S. Army, 1949, and present Federal law. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 229. A comparison of the Manual language with the appropriate subsisting Federal statute discloses that, save for a short introductory clause, present

**7**

military law has adopted, verbatim, the Federal statute. 28 USC § 1732. The boundaries of the business entry doctrine have been delineated by many Federal holdings, and they deserve some consideration here.

The term, "regular course of business" has been defined as "a course of transactions performed in one's habitual relations with others and as a natural part of one's mode of obtaining a livelihood. It [the doctrine] would probably exclude, for instance, a diary of doings kept merely for one's personal satisfaction; but it would not exclude any regular record that was helpful, though not essential nor usual in the same occupation as followed by others." Wigmore, Evidence, 3d ed, § 1523. Mr. Justice Douglas, in the case of Palmer v. Hoffman, 318 US 109, 63 S Ct 477, 87 L ed 645 (1943), summed up this phrase by observing that the entry must be "a record made for the systematic conduct of the business as a business." Thus, it was held in that case not to be part of the business of railroading to preserve the railroad's version of accidents for which it was potentially liable. And the recordation of convictions has been held not to be part of the business of a police department, Clainos v. United States, 163 F2d 593, 596 (CA DC Cir) (1947). However, a memorandum of a telephone conversation between a defendant and a bank employee made as a routine entry in the regular course of the bank's business has been held to be admissible as a "business entry," United States v. Moran, 151 F2d 661 (CA2d Cir) (1945); and records of telephone calls and office visitors customarily kept by a Government office fall under the same exception to the hearsay rule. Finnegan v. United States, 204 F2d 105, 112 (CA 8th Cir) (1953), cert den 346 US 821, 74 S Ct 36, 98 L ed 347. It appears to be of little moment whether the entry is in a freight bill, West Coast Fast Freight v. United States, 205 F2d 249 (CA 9th Cir) (1953); an invoice, United States v. Kaibney, 155 F2d 795 (CA2d Cir) (1946); a memorandum of telephone calls, United States v. Moran, supra; or in a ledger book or voucher,

McGunnigal v. United States, 151 F2d 162, 166 (CA 1st Cir) (1945), cert den 326 US 776, 66 S Ct 267, 90 L ed 469; and all would fall within the terms of the Manual. It is only necessary that the record be regularly kept for a business purpose, and not for only the idle amusement or private information of the maker. Zimberg v. United States, 142 F2d 132, 137 (CA 1st Cir) (1944), cert den 323 US 712, 65 S Ct 38, 89 L ed 573.

In this case, it was shown that the sole duty of the accused for the first third of each month was the collection of funds for the Dependent Aid Association. He entered upon that duty in July 1953 and performed it without incident for some nine months prior to this difficulty. Villasenor had been instructed as to the manner in which he was to account for and safeguard the funds, including a specific direction that he was not to keep the funds on his person overnight, but was to place them in an envelope, seal it, mark it, and place the envelope in the squadron safe. That routine and the entries themselves had no reasonable connection with his personal affairs and the sole purpose for making the entries was to further his collection duties. On April 2, 1954, a day within the appointed collection period, the accused carried out these instructions to the letter. In the presence of witnesses, he placed a sum of money in an envelope, sealed and marked the envelope so as to identify it and its contents, and deposited it in the designated place of safekeeping. When his conduct is measured by the Manual yardstick, it is easily seen that the writing on the envelope qualified as a memorandum of an act done by the accused. It was made in the regular course of his "business" to collect and safeguard the funds of the Association. The writing made by him was in strict compliance with the instructions he had received, and the direction involved was one likely to further the purposes of this business. It follows that in the regular course of this business there was fixed upon the accused the duty of making just such a writing as this. Lastly, the memorandum made here was made at a time

which was contemporaneous with the occurrence of the act done by the accused to safeguard the funds.

## IV

Although we are told that this writing by the accused was too fragmentary and incomplete to qualify ■■■■■■ ■ as a memorandum or record, we give no more than scant weight to this contention. The entry is sufficiently complete to be self-explanatory. But in addition, one in a fiduciary position, as was the accused, has little cause to object that his records accounting for the funds of another are inadequate, where he was the person charged with the duty of maintaining a record. Bowen v. United States, 153 F2d 747, 751 (CA8th Cir) (1946). It may be said here, as it was said in Brady v. United States, 26 F2d 400, 402 (CA9th Cir) (1928), cert den 278 US 621, 49 S Ct 24, 73 L ed 542:

"... one of the duties of defendant as a trustee was to cause to be kept complete and accurate books of account, and if, as a result of his neglect in that respect, the books are somewhat fragmentary, he is scarcely in a position to complain, so long as it appears that they accurately embody all the data he supplied."

## V

Appellate defense counsel strenuously contend that to ground the admissibility of this writing on the ■■■■■■ ■ "business entry" doctrine does violence to another concept of fundamental importance in military law. It is first argued that this writing constituted an admission by the accused.

. In United States v. Patrick, 2 USCMA 189, 192, 7 CMR 65, we took the view that when a statement or writing made by an accused is incriminatory in the light of other facts developed at trial, and is used as such, the statement or writing constitutes an admission. And this is so even though the statement is not evidence of guilt when considered alone. As said by one learned author, "the subject of an admission is *not limited to facts against*

*the party-opponent's* [accused's] *interest at the time of making it.*" Wigmore, Evidence, 3d ed, § 1048 (3). That Dean Wigmore states the Federal rule has been authoritatively established. Opper v. United States, 348 US 84, 99 L ed 104, 109, 75 S Ct 158 (1954).

The next step in the development of defense counsel's argument is founded upon the Manual rule (paragraph 140a, page 251) to the effect that other confessions or admissions are neither admissible or usable as corroborative evidence to satisfy the corpus delicti requirement. Our attention is directed to United States v. Jones, 2 USCMA 80, 6 CMR 80, wherein we gave effect to a similar provision of the 1949 Manual for Courts-Martial and set forth the policy served by such a provision. We have every reason to, and do, reaffirm the policy expressed in that case which is that no man should stand convicted solely upon evidence that he has twice confessed to a single offense.

Upon the predicate formed by the two previous arguments, defense counsel conclude that where evidence, otherwise admissible, meets the test of an admission, it must be used as such, and therefore cannot be used as corroboration. This last step is where we believe counsel misapply a concept. To prove the point we start with a rule succinctly stated in Wigmore, Evidence, 3d ed, § 13, which is as follows:

"In other words, *when an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity.* This doctrine, though involving certain risks, is indispensable as a practical rule."

· At first glance that quotation might appear to support defendant's contention but when analyzed properly it does not. It states that when evidence is admissible for one purpose, it is limited in its use to that purpose. The author later sets out one of the reasons for the limitation, and it is based on the possi-

bility that the jury may use the evidence incorrectly for a different end. As a corollary to that rule is one which states that counsel for the defense may request, and is entitled to, an instruction limiting the evidence to the manner in which it must be viewed. Those rules are applicable, for instance, when witnesses are impeached, and they may be illustrated by the use of inconsistent statements. When a prior inconsistent statement is introduced into evidence, it may only be considered for its effect on credibility and a cautionary instruction denying consideration for it on the merits is in order. The evidence is admissible for only a special purpose, and that is why the limitation is imposed. Here we are not faced with evidence admitted for a limited use. We have general purpose evidence and a defendant would not be entitled to an instruction that it could not be considered on the merits of the case. Once a book entry is admitted, the evidence it furnishes goes to the guilt or innocence of an accused, it is not limited in scope and it can be considered for all relevant evidentiary purposes. It is prima facie proof of the facts it contains; and, in this instance, the entries would establish that the money belonged to the Dependent Aid Association and that the amount in the possession of accused was $437.00. While, in this instance, the book entries may be viewed as admissions, the same entries would be admissible and would establish the same facts had they been entered by a third party who had a duty to record the data. If the entries had been made by a stranger to the action, they would not constitute admissions and they would be admissible to establish, among other things, the corpus delicti, because they fall within an exception to the hearsay rule. Of course, evidence which is no more nor less than an admission cannot be used to support the corpus of the crime and it is, by a provision of the Manual, not usable for that purpose. However, when the evidence is something more than just an admission, it escapes the shackles of that provision. The principles underlying the admissibility and use of book entries differ from those justifying the evidential use of admissions and for reasons which we will later expand, we believe different results are demanded.

It would indeed require us to reject a great deal of material, relevant and trustworthy evidence were we to hold that book entries made by a person charged with an offense, which are also admissions, could not be used to establish that he probably committed an offense. Most every trustee of money is required to keep account of his receipts and disbursements. In many instances the only feasible method of showing a mishandling of the funds would be by the written evidence furnished by the books of accused. If a finance officer's records could not be used to establish his disbursements, the number of witnesses necessary to establish peculations might make prosecution impossible. Indeed, the prosecution of any fiduciary might be rendered well-nigh impossible. This case is an excellent example of the difficulties which would be encountered if entries cannot be used because of their dual character. In order to show that this accused was in possession of $437.00 belonging to the Dependent Aid Association, the Government would have been required to use the admissions contained in the collection records maintained by the accused, which would be open to the objection urged here, or it would have had to call 437 witnesses. Now it may be true that necessity does not make the law, but it has an influence on its interpretation, and the Manual should not be construed so as to bring about absurd results. Furthermore, the purposes to be realized quite often assist in properly construing an enactment.

In looking to the reasons for the Manual rule, we find that a confession or admission cannot alone support a conviction because it may not be trustworthy. With truthfulness present, it is high on the scale of desirable proof. But because of the pressures that may be used to extort a statement, there is a fair risk that a person might confess to a crime he did not commit. The same possibility of untrustworthiness undoubtedly denies the use of one confession or admission to support another. However, the reasons permitting the use of book entries as an exception to

the hearsay rule are such as to secure a high degree of trustworthiness. There is, therefore, no reason why book entries which also are admissions should be treated with the same degree of caution as is extended to writings which are admissions or confessions and nothing more. Furthermore, the rules governing the admissibility of the latter are entirely different from those controlling book entries. Certainly we have no reason to suppose that the use of entries made in the regular course of business as evidence to establish the corpus delicti of the substantive offense would lead to the conviction of a crime that was not committed by the confessor. When the reasons for barring admissions as supporting evidence are applied to book entries they fail and when that happens the rule becomes inoperative. We, therefore, hold that when book entries which have a dual character as admissions are admitted in evidence properly they are not subject to the limitations imposed on mere admissions, and may be used to prove the elements they necessarily contain.

## VI

There is yet another basis upon which these entries may be admissible and available to the prosecution for all purposes. Three closely related Manual provisions must be considered, and they all may be found within the same paragraph (paragraph 140*a*, pages 251–252). For ease of presentation, we set forth these sentences apart from other provisions which are not material here:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. . . . Other confessions or admissions of the accused are not such corroborative evidence. . . . The rule requiring corroboration does not apply to a confession or admission made by the accused before the court by which he is being tried, nor does it apply to statements made prior to or in pursuance of the act."

In net effect, the Manual reasoning here is that a judicial admission, or a statement made prior to, or at the time of, the act, may safely be regarded as trustworthy, even though uncorroborated, for none of the resources of officialdom were utilized to procure its making. The first exception dealing with judicial confessions is of no concern here, but the second is germane to our problem.

In carving out this exception to the general rule of corroboration of confessions and admissions, the Manual draftsmen once again looked to Federal law. We are told by the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 217, that the case of Warszower v. United States, 312 US 342, 61 S Ct 603, 85 L ed 876 (1941), was relied upon as the authority for this distinction.

In the Warszower case, supra, the defendant was charged with the offense of willfully and knowingly using a passport, the issue of which was obtained by a false statement. In order to obtain a passport, he declared himself to be a citizen of the United States. To show the falsity of this, the Government relied upon a series of statements made by the accused at an earlier time to the effect that he was a Russian citizen. Accepting as a premise the contention that these statements of Russian citizenship were admissions, the Supreme Court nonetheless concluded:

"The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions after the fact."

In United States v. Potson, 171 F2d 495, the Circuit Court of Appeals (7th Cir) (1948), considered the use of a financial statement made by the defendant as evidence of the corpus delicti. There we find the principle expressed in this language:

"Defendant attacks the admission of Exhibit 28, the financial statement of defendant made to a bank in 1930.

**11**

He contends that the Government used this exhibit for the purpose of establishing the corpus delicti of the crime charged and that being a mere admission by defendant, its reception in evidence violated the rule than [sic] an extrajudicial admission is not admissible until the corpus delicti has been proved, and that the corpus delicti cannot be proved solely through the use of an uncorroborated admission. The history of this rule is closely allied with another that a man may not be convicted upon his uncorroborated extrajudicial confession, which had its origin in a desire of courts to guard against the tragic consequences of false confessions of guilt. Wigmore on Evidence, Third Edition, Section 2070, Volume VII, p. 395. It would seem clear, therefore, that the rule becomes applicable only when the admission is made subsequent to the time when the crime is committed. . . . Inasmuch as the admission here in controversy was made long prior to the commission of any offense charged it does not fall within the rule upon which the defendant relies. Gordiner v. United States, 9 Cir., 261 F. 910, which he cites, was expressly disapproved by the Supreme Court in the quotation above set forth. It is clear, we think, under the law announced by the Supreme Court, that the exhibit was properly received in evidence."

We have stated previously that, as a basic premise, no man may be convicted upon evidence that he has twice admitted an offense, and therefore other corroboration is necessary; but the departure from that concept by both the Manual and the Federal courts is bottomed upon a sound logical basis. As we understand the basis, it is simply this: if an accused subsequent to the time of the commission of an offense, makes an admission which is later used against him to establish criminality, there is danger that an agency of prosecution, the maliciousness of an enemy, or the aberration or weakness of the accused under the strain of suspicion led him to make the statement regardless of its truth or falsity. However, when the admissions were made before or contemporaneously with the offense, those forces could not have influenced the acknowledgement as at that time no crime was known or suspected by anyone but the accused.

We have stated the principle before we related the facts but they so clearly indicate that the admission preceded, or was made at the time of, the theft, that little need be said. The money was obtained from service personnel during the day and when the accused placed his day's collections in the envelope he withheld something over $100.00. He placed the remaining money in an envelope, sealed it, stapled it, wrote the organization designation and the amount on the outside and then placed it in the safe. The envelope was untouched until opened and the shortage discovered. The extraction of the funds and the entry on the container were so close in point of time as to be part of the same transaction. That satisfies the demand of contemporaneity.

Having concluded that a statement made prior to or contemporaneous with the act itself, even though used as an admission, is sufficient for conviction, we are certain that such an admission may also be used to establish the elements of the corpus delicti. When used to convict, their quality must be such as to establish the relevant elements beyond a reasonable doubt. Their weight when used to establish the probability that an offense has been committed may be much less.

Finally, it occurs to us that an analogy might be drawn between this admission and statements of ▮ his intent, motive, state of mind, or state of body, made by an accused prior to the commission of any offense. Such statements are admissible, as the truth of the matter stated. Manual for Courts-Martial, 1951, paragraph 142d, page 256; Wigmore, Evidence, 3d ed, § 1714. In the normal course of presentation, such a statement would be used as an admission, yet the Manual does not suggest any sort of corroboration requirement for conviction or any limitation upon the use of such a statement as part of the corpus delicti. No good rea-

son suggests itself as to why an admission made prior to, or at the time of, the offense should not be given the same force and effect. We conclude that there was sufficient competent evidence to establish the corpus delicti here.

Accordingly, the decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring in the result):

I doubt that the rule requiring corroboration of a confession is a mere mode of proof. I would follow the rule announced by the United States Supreme Court in Opper v. United States, 348 US 84, 99 L ed 104, 75 S Ct 158. The Manual is not binding on us when it conflicts with the law.

Also, I question the majority's conclusion that the accused's notation on the envelope constitutes a business entry. However, I need not elaborate on either point. Suffice it, that I agree with the majority's determination that the accused's statement is admissible as an inconsistent statement made contemporaneously with the offense, and it constitutes evidence of the corpus delicti. I concur in the result.