UNITED STATES, Appellee

v.

WILLIAM E. BONDS, Private First Class, U. S. Army, Appellant

6 USCMA 231, 19 CMR 357

No. 6316

Decided August 5, 1955

*First Lieutenant Bert M. Gross* argued the cause for Appellant, Accused. With him on the brief was *Major Edwin Doran.*

*First Lieutenant A. Kenneth Pye* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Andrew D. Kane, Lieutenant Colonel Thomas J. Newton* and *First Lieutenant James G. Duffy.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In October 1954, the accused signed a voluntary written statement in which he admitted he had gone absent without authority from the Army sometime shortly after Christmas Day, 1945. When asked if February 23, 1946, was a reasonable date for his unauthorized departure, he answered in the affirmative. On the basis of that admission and other evidence placed before it, a general court-martial convened at Fort Meade, Maryland, found him guilty of desertion in violation of

Article of War 58, 10 USC § 1530, and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. A board of review in the office of The Judge Advocate General of the Army, with only two members participating, affirmed the conviction, and we granted review on two questions.

The first issue requires us to decide whether the board of review was legally constituted to hear and decide this case when one member was absent.

232

The principles controlling that question have since been decided in the affirmative by our opinion in United States v. Petroff-Tachomakoff, 5 USCMA 824, 19 CMR 120, and its further discussion here is unnecessary. The second issue poses the question of whether the evidence, apart from the accused's pretrial statement, is sufficient to establish the corpus delicti of the crime of desertion.

The record shows that before offering the accused's incriminatory statement into evidence, the trial counsel laid a base for its admission by introducing the stipulated testimony of a third party and part of the service record of the accused. The stipulation is in the form of a written statement by a Mr. Frank Rossbach of Baltimore, Maryland, and because of its importance to this question, we include it in its entirety. After identifying the accused, it proceeds:

"I have known the accused since 1943, although we did not have a speaking acquaintance until 1945 or 1946. I am not certain about the exact date, but I can definitely say that I saw the accused in Baltimore, Maryland around our neighborhood during the early part of 1946, when I began seeing him two or three times a week. When I did see him, I saw him standing on a street corner in our neighborhood when I would come home from work in the evening around six or seven p.m. Beginning in the early part of 1946, I saw the accused on an average of from two to four times a week, and I never missed seeing him a single week, at least on one day during the week, from the early part of 1946 until he was returned to military control. The accused was always dressed in civilian clothes during these times that I saw him. I saw him every week on these occasions upon my return from work, and the latter part of 1947 or the early part of 1948, we began working together as plumbers. From that date on, the accused and I worked together at various times as plumbers in and around Baltimore, and we began to pal around together in 1947, seeing each other more frequently. The accused never mentioned anything about the Army during these times that we were working together and we continued either working with each other or seeing each other frequently until the accused was returned to military control in 1954."

The relevant portions of accused's service record proved that he re-enlisted in the Army at Fort Bragg, North Carolina, on November 10, 1945, for one year plus furlough time. On November 14, 1945, he was granted a ninety-day furlough which would require his return to a duty status on February 13, 1946. On December 26, 1945, he was transferred to Fort Meade, Maryland, and his departure from Fort Bragg is shown as occurring on the same date as that on which his furlough began. The last entry in his service record shows that he was transferred from Fort Meade to Fort Jackson, South Carolina, on February 23, 1946, by paragraph 302, Special Orders, Headquarters, Fort George G. Meade, and that he was paid while at Fort Meade up through January 31, 1946. No further entries appear, and the last page of the service record, one-half of which is reserved for a "Final Endorsement," is blank.

In connection with the service record entries, the law officer instructed the court-martial, at trial counsel's request, to take judicial notice of War Department Technical Manual 12-256, paragraph 38, dated November 1944, and War Department Technical Manual 12-230, paragraphs 69a and 69g, dated October 1944. Pertinent material from these Technical Manuals was read to the court-martial by trial counsel. The gist of the first reference is that distribution of special orders must include each individual named in the orders, and the second directs that the final endorsement on an enlisted man's service record is to be used only for recordation of his discharge or other separation from Federal service. Missing from the service record is any entry concerning the status of the accused as an absentee.

We have recently discussed the sufficiency of the evidence to establish the

corpus delicti of an offense in United States v. Villasenor, 6 USCMA 3, 19 CMR 129, and United States v. Payne, 6 USCMA 225, 19 CMR 351. In those instances we reaffirmed the rule that a confession or admission is inadmissible against an accused unless the record contains other evidence that the offense has probably been committed, and we have held this to mean some evidence indicating the probable existence of each element of the offense charged. United States v. Isenberg, 2 USCMA 349, 8 CMR 149; and United States v. Petty, 3 USCMA 87, 11 CMR 87. Accordingly, if it appears that the evidence in this record, aliunde the admission, will support a finding that the accused probably committed the offense of desertion, then this conviction must stand.

The elements of the desertion offense charged here are: first, absence without authority, and, second, intent to remain away permanently. Manual for Courts-Martial, U. S. Army, 1949, paragraph 146a, United States v. McCrary, 1 USCMA 1, 1 CMR 1. That those are the essential elements of this desertion is not disputed by the parties, but appellate defense counsel insist that the record is deficient in that the time of the inception of the absence is not fixed with certainty. With regard to that item we believe the law should be, and is, that the date need not be shown with exactness. United States v. Madro [ACM 5694], 7 CMR 690, 694. There may be instances when, for particular reasons, definiteness is required but this case is not in any category of that sort, and we are not dealing with the kind of certainty necessary to support a conviction. Here, the specification charges the accused with deserting on or about the 23d day of February 1946, and if the evidence establishes that on or near that time the absence probably commenced, the evidence is sufficient for corpus delicti purposes.

The accused's service record tended to show that he enlisted in the Army for a one-year period in November 1945. His station then was Fort Bragg,

North Carolina. He left on furlough and he was transferred to Fort Meade, Maryland. If he complied with those orders, and there is some evidence to that effect, he reported in at Fort Meade not later than February 14, 1946. At least he reported for pay purposes, as sometime during that month he drew his January pay at that post. On February 23, 1946, he was transferred to Fort Jackson, South Carolina, and there is no showing that he did not receive a copy of his change of station orders. If the Army officials performed properly the duties imposed on them by Army Regulations, and in the absence of any evidence to the contrary we presume they did, the accused was furnished with those official documents. To avoid the claim that we have not given consideration to the presumptions favorable to the accused, we mention that from the failure to record the absence we can presume the accused was not absent from his unit in South Carolina, but that will not help him if the evidence rebuts the presumption. Based solely on the service record entries and the presumptions of regularity, both favorable and unfavorable to the accused, his place of duty was Fort Jackson, South Carolina, and his departure date from Fort Meade was February 24, 1946. However, the latter date appears to have been prospective as the entry was made on the day previous. That is the last recorded entry, and in so far as the military records are concerned, accused then dropped out of sight, but he soon reappears on the scene through another witness.

The stipulated testimony of Mr. Rossbach, previously quoted, fills in the interstice between the time of the last entry and the date of accused's return to military control. He testified he had known the accused since 1943 although his speaking acquaintance started late in 1945 or early in 1946. In the early part of 1946 he noticed the accused two or three times every week in his neighborhood in Baltimore, Maryland. The accused would be standing on a street corner around 6:00 p.m. or 7:00 p.m. dressed in civilian clothes. In the latter part of 1947 or

234

1948 the witness and accused started working together as plumbers and in the earlier year the two began to travel around together. The working or social contacts were maintained until the accused was apprehended in 1954, and during the seven or eight years of friendly relationship, the accused never mentioned his Army obligation.

When the facts given by that witness are considered in the light of the service record entries and other facts as we know them, the criminal picture takes form. Certainly when an enlisted man, whose duty station is located some 500 odd miles from where he is seen, is observed with regularity for a long period of time, dressed in civilian clothes contrary to regulations (AR 600–40, March 31, 1944, paragraph 1 (a)) and accepting civilian employment, there is a probability he has abandoned the service. From the entire evidential structure, aside from the confession, it appears probable to us that the abandonment occurred when he was first observed to have reverted to civilian traits. That was during the month of February 1946.

Again, pretermitting the pretrial admission, the evidence demonstrates the probable existence of the intent to remain away permanently. Mr. Ross-bach's stipulated testimony was that he saw the accused over a period of some eight and one-half years under circumstances which never suggested that the accused did not belong to the civilian community. The accused lived, worked, and acted as though his military career had been forsaken for all time, and he was returned to the service involuntarily. Any unauthorized absence of that length, supported by the other related incriminating facts, will support an inference of the necessary intent not to return. United States v. McCrary, supra; United States v. Uchihara, 1 USCMA 123, 2 CMR 29.

It hardly needs to be mentioned, but the facts we have related, even though uncertain in some details, are supported by a pretrial statement which removes all doubt about any ingredient of the offense which was indefinite. Finally, when all of the evidence we find in the record is placed in the weighing scales, it is ample to support the findings and sentence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.