UNITED STATES, Appellee

v

HAROLD K. TAKAFUJI, Specialist Second Class, U. S. Army, Appellant

8 USCMA 623, 25 CMR 127

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief were *Colonel James M. Scott* and *First Lieutenant Bert M. Gross.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

HOMER FERGUSON, Judge:

At his trial for desertion, terminated by apprehension, the prosecution introduced over defense counsel's objection a corrected morning report entry showing the accused absented himself without authority on May 5, 1952. The corrected entry was made on January 25, 1956. The law officer's ruling admitting the entry in evidence is disputed by the accused on this appeal. The claim of error brings up for review the question of whether under applicable regulations a morning report entry can be denied admission into evidence because not made within a reasonable time of the event or fact it purports to record.

In a number of earlier cases we intimated that the admission in evidence of a morning report entry ██ might depend upon the interval of time between the making of the entry and the occurrence of the fact or event recorded. United States v Hagen, 2 USCMA 324, 8 CMR 124; United States v Williams, 1 USCMA 186, 2 CMR 92; accord, United States v Brown [CM 367480], 13 CMR 303; contra, United States v Boling [NCM 196], 9 CMR 567. The question was squarely presented to us later in United States v Wilson, 4 USCMA 3, 15 CMR 3. In that case a corrected morning report entry made nineteen months after the event was admitted in evidence. In a unanimous opinion sustaining the trial ruling, we said that:

"We are aware of no limitation of time governing the making of a corrective entry, and none has been called to our attention. In fact, the necessity for such a correction would seem properly to bring it within the popular precept 'better late than never.' It must not be overlooked that morning reports serve numerous purposes in the military services. . . . *Accordingly, we must reject any defense assertion that because of the time factor, no official duty prompted the preparation of the entries now before us, or that they were not made in accordance with regulations.*" [Emphasis supplied.]

Although little can be added to the cogency and compelling nature of this language, it is not inappropriate to make some further comments.

Even though morning reports serve numerous purposes as outlined in the *Wilson* case supra, their basic function is to record "the official status each day of the reporting organization and each person assigned or attached thereto." Paragraph 2, AR 335-60, Reports— Morning Report, February 7, 1957. For these reasons, it is "considered one of the most important basic documents prepared within the Army," and unit commanders are made responsible for the preparation and accuracy of these reports. Paragraph 2, supra. Paragraph 3*h* of the regulation provides for delayed morning report entries after "diligent effort" has been made to ascertain the true facts. The correction of a morning report is also neither an accidental nor a thoughtless gesture. Rather it is a solemn act performed in specific compliance with an official directive of vital importance to service

administration. Paragraphs 8 and 85, AR 335-60, supra. Substantial delay in performing the act may indeed make it difficult for the official to "ascertain the truth of the matter set forth in the record." (Manual for Courts-Martial, United States, 1951, paragraph 144d, page 267.) But the possibility that the difficulty may induce the official to record the matter without any real effort to determine its truth is no reason to deny the *power* to make the entry. As the Court of Appeals for the District of Columbia said in a related connection: "Abuse of power is, of course, forbidden, but the mere potentiality of abuse does not constitute invalidity of power." Bailey v Richardson, 182 F 2d 46 (CA DC Cir) (1950), affirmed by an equally divided court, 341 US 918, 71 S Ct 669, 95 L ed 1352.

An official record made in conformity with applicable law or regulation and prepared by one charged with the official duty of doing so, is presumed to speak the truth. United States v McNamara, 7 USCMA 575, 23 CMR 39. When properly authenticated, it is entitled to be admitted into evidence. United States v Parlier, 1 USCMA 433, 4 CMR 25; United States v Henry, 7 USCMA 663, 23 CMR 127. As in the case of business entries, however, an official record is not admissible if made principally with a view to prosecution or other disciplinary or legal action. United States v Hagen, 2 USCMA 324, 8 CMR 124; paragraph 144d, Manual for Courts-Martial, supra. Regulations in effect at all times important to this case required that an entry be made in the morning report of an individual's organization to show his absence status. United States v Phillips, 3 USCMA 557, 13 CMR 113. That much is virtually conceded by the accused. He contends, however, in the case of a long-delayed entry there is no assurance that the entry is based upon personal knowledge or "trustworthy channels of information." See United States v McNamara, supra; United States v Coates, 2 USCMA 625, 10 CMR

123. Generally speaking, the time when an entry is made goes only to the question of weight not admissibility. The defense may always examine the one who made the entry in order to ascertain the truth of the facts or events recorded. Likewise, inquiry into the circumstances surrounding the making of the entry may produce evidence which will affect not only weight but admissibility as well. In United States v Coates, supra, page 629, we referred to just such a situation where we said as follows:

". . . When an 'official record' is offered in evidence, and it appears that it was prepared by a military person charged by regulation with the duty of doing so, it will be presumed that it was prepared in accordance with regulations, and by one who knew, or had the duty to know or to ascertain the truth of, the facts or events recorded. United States v Masusock . . . [1 USCMA 32, 1 CMR 32]. If it can be shown that the data reported are inaccurate, or even that the source of the reporting officer's information was not 're- liable,' these are matters for the defense to bring forward."

It should be emphasized that if the defense attacks the admissibility of a morning report entry, the ultimate burden of proving officiality rests upon the Government. See United States v Anderten, 4 USCMA 354, 15 CMR 354.

As a second prong to his argument, the accused maintains that the morning report entry was based upon information supplied by him and, therefore, it does not constitute independent evidence of his absence sufficient to support his conviction. See United States v Bonds, 6 USCMA 231, 19 CMR 357. The evidence shows that the accused was apprehended on a civilian construction job by a Japanese detective on January 10, 1956, at the request of the Army and was turned over to the military authorities. While in the custody of the Japanese officer they went from the place of apprehension to the accused's home. In the course of their journey they engaged in conversation.

On defense counsel's objection, the detective was not permitted to testify regarding the content of the conversation. The corrected morning report entry was made on January 25. On January 30, after full advice of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, the accused submitted a voluntary statement to the military authorities in which he admitted his unauthorized absence, and gave a detailed account of his reasons and of his conduct during his absence. In order to find that the morning report was prepared on the basis of information furnished by the accused, we must speculate on the content of the conversation between the accused and the Japanese detective; and we must also assume that the conversation was reported by the detective to the military authorities. To engage in such speculation is, in effect, to add to the record of trial. This we cannot do. We must take the record of trial as we find it. United States v Beninate, 4 USCMA 98, 15 CMR 98. Since "we are not informed in the premises," we must give effect to the presumption that the information was obtained by the recording officer from proper sources. United States v Wilson, supra, page 8. Cf. United States v Anderten, supra.

For his final claim of error, the accused contends that there is insufficient independent evidence of the offense charged to corroborate his confession. United States v Mims, 8 USCMA 316, 24 CMR 126; United States v Villasenor, 6 USCMA 3, 19 CMR 129. The foundation of the argument is built primarily upon the assumption that the morning report entry of his unauthorized absence is inadmissible. Since we have determined this matter against the accused the principal support of his argument disappears. The morning report entry and the other evidence is sufficient to show that the offense charged was probably committed. In addition to the evidence of his absence, it appears that he was apprehended at the request of military authorities; that he had been for at least three months engaged in a civilian occupation as a plasterer for a Japanese building contractor; that he had been transferred to Hawaii but did not comply with the terms of his travel orders; that according to the Japanese detective, the accused lived in an area in which there were no "American type houses" or Americans in residence.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.