## THE STATE v. JONES.

1. **Criminal Evidence:** MURDER: EXPLANATION OF DECEDENT'S PRESENCE. Where the state sought to show that the decedent was on legitimate business at the time he was killed, testimony that an *arrangement* had been made the day before, which called decedent on proper business to the place where he was killed, was not objectionable on the ground that it stated a conclusion of the witness rather than the facts.

2. ——: DECLARATIONS: WHEN ADMISSIBLE AS RES GESTÆ. To render declarations admissible as part of the *res gestæ*, it is not necessary that they be precisely concurrent in point of time with the principal transaction. It is sufficient if they be near enough to clearly appear to be so spontaneous, and unpremeditated, and free from sinister motives, as to afford a reliable explanation of the principal transaction.

3. **Evidence:** PRACTICE: CROSS-EXAMINATION: WHAT IS NOT. A question asked in cross-examination, the object of which was, not to allow the witness to modify or explain his testimony in chief, nor to elicit testimony to discredit it, but to rebut it by proof of other facts, was rightly excluded as not being proper cross-examination.

4. **Criminal Law:** MURDER: EVIDENCE OF DEFENDANT'S INTENT IN MEETING DECEDENT: INSTRUCTION. Where the evidence was strong that defendant killed deceased upon the highway by shooting him with a revolver, the fact that he must have taken the revolver with him when he went to the place of meeting was some evidence that he sought the

meeting with the design of killing decedent, and sufficient to sustain an instruction based upon that theory.

5. **Instructions**: WHOLE CHARGE TO BE CONSIDERED TOGETHER. An instruction which, when considered alone, might be regarded as erroneous, is no ground for reversal, when, taking the whole charge together, the jury could not have been misled thereby.

6. **Criminal Law**: MURDER: DEFENSE OF INSANITY: POINT OF TIME: INSTRUCTION. Where it was sought to show that defendant was insane at the time of the murder for which he was indicted, it was error for the court to instruct the jury that they were to consider the facts relating to the conduct, language and appearance of the accused *during the time of the alleged killing*, thus leaving the jury to infer that his conduct, language and appearance at other times were to be excluded, especially where all the evidence as to conduct, language and appearance related to other times than the precise time of killing.

7. ———: ———: ———: BURDEN OF PROOF: INSTRUCTION. Where one charged with murder relies upon his insanity as a defense, the burden is on him to establish by a preponderance of the evidence that at the time of the killing he was in such a state of insanity as not to be accountable for the act; but an instruction that, "if the evidence goes no farther than to show that such a state of mind was *merely probable,* it is not sufficient," was erroneous, because its effect was to require more than a mere preponderance of the evidence to establish the defense.

SEEVERS and ROTHROCK, J. J., dissent from the last two points.

Upon rehearing the foregoing points were affirmed, SEEVERS and ROTHROCK, J. J., dissenting as before, and the following additional point was determined:

8. **Practice in Supreme Court**: RIGHT OF THE STATE TO REHEARING IN CRIMINAL CASES. While § § 3201, 3202 of the Code are general in their character, a proper construction of them in the interest of justice requires that they be considered as authorizing rehearings in this court in criminal cases; and such rehearing may be had upon the petition of the state as well as of the accused. Such has been the practice of this court. See *State v. White,* 41 Iowa, 316, and 45 Id., 325; *State v. Brandt,* 41 Id., 593.

*Appeal from Harrison District Court.*

THURSDAY, SEPTEMBER 18.

THE defendant was indicted for murder in the first degree. He was convicted of manslaughter, and sentenced to the penitentiary for seven years. From the judgment he appeals.

*Scott & Hight,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

ADAMS, J.—This case is before us on a second appeal. See 52 Iowa, 150.

The defendant was charged with the murder of one Roberts. In February, 1878, the defendant and Roberts were engaged in farming, and resided upon adjoining farms in the county of Pottawattamie. On the sixth day of that month Roberts was found dead in the road, about thirty rods from the defendant's house. There was a hole in his head near one eye, and a pistol ball was found in his brain. He had left home a short time previous, with the avowed intention of going on an errand to the house of one Axtel. The road from Roberts' house to Axtel's led by the defendant's. Circumstances, not necessary to be detailed here, indicated strongly that Roberts was killed by the defendant.

His counsel contend that if he killed Roberts he did so in self defense. They also contend that he was in such an unsound condition of mind that he was not responsible for his acts. Soon after Roberts died, and not far from where he died, the defendant was seen with blood running down both sides of his face, indicating that he had received an injury. As to his mental condition, the evidence shows beyond controversy that he was suffering under great depression, caused by trouble of the gravest character. His family was broken up. His wife, as the evidence tends strongly to show, had committed adultery with Roberts, and the fact had come to the defendant's knowledge. She had left him, and had removed all the furniture from the house except a bedstead, and he had reason to apprehend that Roberts would the next day, or soon thereafter, dispossess him of the house. To the specific evidence of insanity we shall refer briefly hereafter.

I. The defendant assigns as error the admission of certain evidence. One M'Cuen was examined as a witness in behalf

**1. CRIMINAL evidence: murder: explanation of decedent's presence.**

of the state. He testified that the evening before Roberts' death he saw him at Axtel's. For the purpose of showing that Roberts was on legitimate business at the time he was killed, the state sought to show that he had an errand at Axtel's that day. It accordingly asked M'Cuen a question in these words: "State if any arrangement was made, on the evening prior to the decease of Roberts, by which Roberts was to go to Axtel's the next day?" This question was objected to by the defendant as leading, immaterial and incompetent. The court overruled the objection, and the witness answered: "He made an arrangement to be there the next morning between eight and nine o'clock to look at some steers Axtel had to sell."

The question, strictly considered, called for an answer by *yes* or *no*, and possibly it might be considered as indicating that the interrogator desired that the answer should be in the affirmative. But the question was only very slightly leading, if at all, and it seems clear to us that the defendant was not prejudiced by the character of the question as leading.

He further objects, however, that the question called for a conclusion. He insists that an *arrangement* is the result of what is said, and that, if any evidence upon the subject was admissible, the witness should have been asked for what was said, and not the result.

If the case were to turn upon whether there was or was not an *arrangement*,—that is, if that were the ultimate fact to be found by the jury, there would be much force in the defendant's objection. But that was not an ultimate fact. Any evidence of talk indicating Roberts' purpose to go to Axtel's the next morning to buy steers, though amounting to less than an arrangement, would have had substantially the same effect. It would have been a circumstance tending to show that Roberts' journey that morning toward the defendant's house was explanable upon a different theory from that of the defendant, which was that he was out seeking the defendant's life or injury.

It is further objected that what was said was at least but hearsay, and inadmissible for that reason, if for no other. The 2. ———: declarations: when admissible as res gestæ. talk, it is true, was not concurrent with the journey in point of time. But, to render declarations admissible as a part of the *res gestæ*, it is not necessary that they should be precisely concurrent in point of time with the principal transaction. It is sufficient if they are near enough to clearly appear to be so spontaneous and unpremeditated, and free from sinister motives, as to afford a reliable explanation of the principal transaction. *People v. Vernon*, 35 Cal., 49; *Mitchell v. State*, 41 Ga., 527; *Handy v. Johnson*, 5 Md., 450. The case at bar, we think, comes within the rule. We see no error in allowing the question to be answered.

II. One Orlando White, a nephew of the defendant, was examined as a witness in behalf of the state. Having testi- 3. EVIDENCE: practice: cross-examination: what is not. fied that five or six weeks prior to Roberts' death the defendant borrowed a revolver belonging to the witness' brother, he was asked by defendant, on cross-examination, whether the defendant was not at that time on friendly terms with Roberts. The state objected to the question as not in cross-examination, and the objection was sustained.

In this we think that there was no error. It was not the object of the question to allow the witness to modify or explain his testimony given in chief, nor was it to elicit testimony which should have the effect to discredit the testimony which the witness had given in chief. The object was to prove an independent fact, not explanatory of, nor inconsistent with, the testimony given, but to render the fact testified to consistent with the defendant's innocence; or, in other words, the object was to rebut the effect which the state intended to produce. It appears to us, therefore, that if the defendant desired to introduce such evidence it was more proper that he should be required to do so in rebuttal.

III. The court instructed the jury that, "if the evidence

shows that the defendant deliberately formed a design to take the life of Roberts, and sought a meeting with him for the purpose of executing that design, and in that meeting, and in pursuance of that design, inflicted upon Roberts the wound which caused his death, the crime, if he is responsible for the act, is murder in the second degree." The defendant assigns the giving of this instruction as error. It is contended by the defendant that there is no evidence that he sought a meeting with the design to take Roberts' life.

4. CRIMINAL law: murder: evidence of defendant's intent in meeting decedent: instruction.

We think that the evidence is very strong that the defendant took Roberts' life by shooting him with a revolver. That he sought a meeting with that intent, the evidence is not so strong. But if he took Roberts' life with a revolver, then it would seem that he must have taken a revolver with him when he proceeded to the place of meeting. The case is quite different from what it would have been if Roberts had been killed with a club, or some weapon which might be supposed to have been picked up by the wayside. We think that there was some evidence that the defendant sought a meeting with the design of killing Roberts.

IV. The court gave an instruction in these words: "You have evidence of the conduct, language and appearance of the accused during the time of the alleged killing, during which time it is alleged that he was insane. You are to consider all the facts which you find to be established by the evidence, and which relate to the conduct, language and appearance of the defendant during that time; and you should consider them for the double purpose of testing the value of the opinions of such witnesses as have given opinions on the question of the defendant's insanity, based upon such facts, and of determining whether the fact of insanity is established independent of such opinions." The defendant assigns the giving of this instruction as error. The objection urged is that the jury was told, in substance, that if they found the defendant insane they must so find

5. INSTRUC- TION: whole charge to be considered together.

from facts independent of opinions. We hardly think that the instruction, even when taken by itself, is susceptible of such construction. But the jury was expressly told in another instruction that they were to determine what weight and credit should be given to the opinions of witnesses upon the question of insanity. The jury, we think, could not have been misled in the way which the defendant claims. While we say this, we ought perhaps to say that we do not regard the question as to whether insanity was fully established by facts, independent of opinions, necessary to be considered. It is true that the facts, as the court said, were to be considered for a double purpose. But, in defining the double purpose, we should have been better pleased if the court had said that they might be considered for the purpose of testing the value of the opinions, and upon the question as to how far they tended to establish the fact of insanity independent of the opinions. We make this criticism the more freely, because we have reached the conclusion that, for errors to be pointed out hereafter, the case must be reversed and remanded for another trial.

V. The instruction above set out, in our opinion, contains error. The jury was directed to consider the facts relating to the conduct, language and appearance of the defendant *during the time of the alleged killing.* Now, while it is true that it was not material whether the defendant was insane at any other time if he was sane at that time, yet his conduct, language and appearance at other times were not to be excluded. There was no evidence whatever as to the conduct, language and appearance of defendant at the precise time when Roberts was killed. He was seen by others on that day, but the evidence of insanity pertains to other days. The evidence showed that he was insane in early life, and had not fully recovered when he came to western Iowa. There was evidence tending to show that from the time of his first insanity "any trouble" (to use the language of the witness) "would throw him off his

6. CRIMINAL law : murder: defense of insanity : point of time : instruction.

balance." Four relatives of the defendant testified to his changed mental condition from the time when his trouble with Roberts commenced, and they gave their opinion that he was insane. Two others, who do not appear to be relatives, testified to strange conduct of the defendant, and gave their opinion that he was insane. In addition to that, one physician testified that he made an examination of him, and regarded him as insane. While the court did not say that the jury should not consider the conduct, language and appearance of the defendant at times other than that of the alleged killing, the tendency of the instruction was to confine, by implication, the attention of the jury to that time. In this it appears to us that there was error.

VI. The court gave an instruction in these words: "The burden is on the defendant to establish by a preponderance of evidence that at the time of the killing of Roberts, if he did kill him, he was in such a state of insanity as not to be accountable for the act, and, *if* the evidence goes no further than to show that such a state of mind was possible, or *merely probable*, it is not sufficient, but it must go further, and overcome the presumption of sanity, and fairly satisfy you that he was not sane." The giving of this instruction is assigned as error.

*7. —— : ——:*
*—— : bur-*
*den of proof :*
*instruction.*

In our opinion the instruction cannot be sustained. If it was made *probable* to the jury that the defendant was so far insane as not to be accountable for his acts, we think that he should have been acquitted. Worcester defines *probable* as "having more evidence than the contrary." Webster defines it as "having more evidence for than against." We think that it was sufficient if the evidence of insanity preponderated. The idea of the court seems to have been that, as the presumption of sanity counts for something, it cannot be said to be overcome by a bare preponderance of evidence.

There is a course of reasoning which might, perhaps, seem to support this view. The difference between a bare preponderance of evidence and that which is next less might be

said to be infinitely small, and that what is infinitely small cannot be weighed or appreciated. But such considerations are too refined.

The rule as to the presumption of sanity has its practical application in imposing the burden of proof upon him who sets up insanity. This is all. The presumption is not to be weighed against any measurable amount of evidence.

The judgment, we think, must be reversed, and the cause remanded for another trial.

REVERSED.

SEEVERS, J. *dissenting.*—I. I do not believe the instruction set out in the fourth paragraph of the foregoing opinion is erroneous. The material inquiry was whether the defendant was insane at the time the homicide was committed. His acts and conduct at that time, therefore, were material as bearing on this question. It is immaterial whether the defendant was insane prior to the homicide, if he was not insane then. The acts and conduct of the defendant prior to the homicide, bearing on the question of his insanity at the time of the homicide, are not excluded from the consideration of the jury, unless it can be said to have been done by implication. But, if this is so, the instruction is not, therefore, erroneous. But in my opinion no such implication can be drawn.

II. This court has held in more than one adjudged case that where the defense is insanity the burden is on the defendant to establish such defense by a preponderance of the evidence, and this, and no more, is the thought of the instruction set out in the sixth paragraph of the foregoing opinion. By the use of the word "probable," the court meant this, and no more, and so the jury, I think, understood the instruction. It seems to me that the reasoning of the foregoing opinion upon the points above mentioned is refined, technical, and without substantial merit. The court plainly stated that insanity must be established by a preponderance of the evidence, and the jury could not have understood that any other rule was announced

in the instruction. I think it is unfair to the court, and not required by the case, to resort to dictionaries for a definition of the word "probable," when the connection in which the word is used is taken into consideration. When the instruction as a whole is considered, I am unable to conclude that the word in question as used was prejudicial.

MR. JUSTICE ROTHROCK concurs in this dissent.

### OPINION UPON REHEARING.

BECK, J.—At a former term a rehearing was granted in this case, upon which it has been again argued and submitted.

I. Counsel for defendant moved to strike the petition for rehearing from the files, upon the ground that this court has no authority to entertain a petition by the state for a rehearing in a criminal case. It is insisted that no such authority is conferred by statute, and cannot exist unless so conferred. There is no provision of the Code expressly declaring that rehearings may be had in criminal cases. The sections relating to the subject, 3201, 3202, chapter 2, title XIX, are general in their language, and do not specify the classes of cases to which they are applicable. They are found in a chapter regulating appellate proceedings in the supreme court. In the chapter (35, title XXV) relating to appeals to the supreme court in criminal cases, there is no provision upon the subject of rehearings. Counsel for defendant insist that the provisions first referred to relate exclusively to appeals in civil cases, and that therefore there is no statute authorizing rehearing in criminal cases. We think differently. The chapters in which the sections first cited are found regulate the practice generally of this court. Many provisions are found in this chapter in regard to matters of practice, some of which affect the rights of the parties, and all are intended to promote justice, to which there are no corresponding provisions in the chapter relating to appeals in criminal cases. Of this character are

*8. PRACTICE in supreme court: right of state to rehearing in criminal case.*

sections 3200, 3203, 3204, 3205, 3206, 3208 and 3209.   Un-
less these provisions are regarded as applicable to criminal
cases, persons convicted would suffer inconvenience and hard-
ship, and possibly injustice, upon the trial of their appeals in
this court.   The observation is especially true in reference to
the matter of rehearings.   Unless a rehearing is provided for
by sections 3201–2 in a criminal case, there is no statute
authorizing it.   It could be granted neither to the state nor
to the defendant.   Surely, the courts would not adopt a con-
struction of the statute which would be liable to result in
defeating justice, by preventing one accused of crime from
having an opportunity to fully present his case to the appel-
late court upon rehearing.   It cannot be possible that the
legislature intended to deny such an opportunity in criminal
cases, while securing it in civil cases.

While this question has not been decided by this court,
never having been raised before, we have entertained peti-
tions for rehearings filed by the state, and, in one case, upon
a reargument, reached a conclusion different from the decis-
ion first announced.   See *State v. White*, 45 Iowa, 325; s.
c., 41 Id., 316; *State v. Brandt*, 41 Iowa, 593.

It is our opinion that the motion of defendant to strike the
petition for rehearing from the files ought to be overruled.

II.   Upon a careful re-examination of the case, we reach
the conclusion that the opinion of the majority of this court,
SAME as NO. 6,   originally filed in this case, is correct.   We will
ante.   proceed briefly to state some reasons in support
of the opinion, in addition to those presented in it.

The judgment of the district court was reversed upon con-
clusions reached in the fifth and sixth points of the opinion,
holding that there is error in two instructions given to the
jury.   They need not be here repeated.

The instruction discussed in the fifth point limits the
consideration of the appearance, conduct and language of the
defendant to the time of the killing.   It is admitted by the
instruction that evidence of conduct, appearance and lan-

guage of the accused may be properly considered upon the issue of defendant's sanity, but it declares that such evidence must be confined to conduct, appearance and language "during the time of the alleged killing." This instruction is so obviously erroneous that little need be said about it. If defendant had been shown to be insane twenty-four hours, or an hour, before the killing, and no evidence upon the issue of his sanity related to his mental condition at the very time of killing, under this instruction he must be convicted. Yet the rule of the law is that, when a condition is shown to exist, it will be presumed to continue until the contrary is shown by evidence or presumptions arising upon the facts of the case. This is a rule of universal application, and it is not possible to except the case of insanity from it. A man charged with a homicide is proved to be insane by his conduct, language and appearance at a stated time. He is seen no more for twenty-four hours, or for one hour, and within that time he has, in the view of no witness, taken the life of another. Under the rule of the instruction, evidence of his insanity an hour before the homicide is excluded, and the evidence of conduct, language and appearance is restricted to a time when no man saw him. The supposed case, though extreme, is strictly within the rule of the instruction, and serves to emphasize an expression of the error of the instruction.

This court held correct an instruction directing the jury to consider "the facts connected with defendant's conduct, language and appearance, etc., *preceding* the alleged homicide." *State v. Mewherter*, 46 Iowa, 88.

It is obvious that the issue of sanity must be tried upon evidence of the condition of the mind before the immediate time of the alleged crime. The conduct, language and appearance of the accused, being manifestations of his mental condition, may be shown in evidence. Of course, their force, as proof of sanity or insanity, diminishes as they recede in time from the moment of the crime, in harmony with pre-

sumption, arising from known facts, or the observation and experience of men.

III.   We will now proceed to consider briefly the instruction discussed in the sixth point of the opinion.   It announces the doctrine that, if the evidence shows that the insanity of defendant was probable, it will not overcome the presumption of sanity, and that more evidence than this is required to satisfy the minds of the jury that defendant was insane.

SAME as NO 7, ante.

It is conceded that the defendant was presumed by the law to be sane, and that, therefore, the burden of proving insanity rested upon him.

All conclusions as to facts are based upon evidence; and men are often required to form conclusions, and act upon them, when the mind is in a condition of doubt and uncertainty. But men in all affairs, when they must act upon evidence, weigh the evidence, and are controlled by the greatest quantity, though doubting and uncertain.   If there be no evidence, they can form no conclusion, and, if required to act, they are controlled by mere chance.   If the evidence is slight, barely enough to incline the mind, they regard the fact toward which the proof points as probable.   Men act upon probabilities, and in doing so they understand that there is more evidence in support of their conclusion than against it. When we say a fact is *probable*, we mean that we have more evidence in support of it than to the contrary.   This is the meaning of the word in its common use.

In the law, a thing is presumed to exist, or not to exist, according as the burden of proof rests upon the side which affirms it.   If there is no proof in a case, the issue is decided against the party holding the burden of proof.   In this case defendant alleged his insanity, and he was, therefore, required to prove it.   In the absence of proof of insanity the law regards him as sane.   This is what is meant by presumption of sanity. Now, it is obvious that the measure of proof which will incline the mind toward belief of the insane condition will

overcome the presumption of sanity. It is not true that the legal presumption of sanity must be balanced by some measure of proof of insanity before other evidence of insanity can be put in the scale; that this presumption is to be regarded as evidence to be overcome by proof.

The presumption in question simply supposes an equilibrium of proof, and the party holding the affirmative is not entitled to judgment unless he places evidence in the scale which will turn it. If the party upon whom the burden rests gives evidence which creates a *probability*—that is, introduces more evidence than the other party, he overcomes the presumption resting against him, referred to in the instruction, and is entitled to judgment.

We conclude that the instruction in question is erroneous, in so far as it holds that evidence which authorized the conclusion that insanity was probable is not sufficient to overcome the presumption of sanity.

We adhere to the conclusions heretofore announced, and direct that the former order reversing the judgment of the district court be permitted to stand.

REVERSED.

ROTHROCK, CH. J., and SEEVERS, justice, adhere to their former dissenting opinion, but concur in the first point of the opinion upon rehearing.