STATE OF IOWA v. S. G. THIELE, Appellant.

| 119 | 659 |
| 121 | 636 |
| 119 | 659 |
| 126 | 463 |

**Murder:** INSANITY: BURDEN OF PROOF. Where a plea of insanity
1    is entered, the burden is on the defendant to establish the same by a preponderance of the evidence.

**Insanity:** INSTRUCTION. An instruction that defendant is not en-
2    titled to an acquittal if the evidence proved him probably insane, is erroneous.

**Same.** On a prosecution for murder, where a plea of insanity is
3    entered, an instruction that evidence tending to show that insanity is probable does not overcome the presumption of sanity but that more must be shown to accomplish this, and that this defense must be established by a preponderance of the evidence, is ground for reversal.

*Appeal fro.n Montgomery District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, APRIL 8, 1903.

THE defendant was accused and convicted of murder in the first degree, and, from judgment of imprisonment for life at hard labor, appeals.—*Reversed.*

*C. E. Richards* and *P. W. Richards* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

LADD, J.—The accused, who had separated from his
wife, Ida Marie Thiele, saw her pass the house in Villisca
at which he was stopping. He immediately ran across
the street and stabbed her with a knife three times. From
the wounds so inflicted she died within a few minutes.
At the trial, the defense of insanity was interposed.

The evidence tended to show that, for some time pre-
vious, the defendant acted peculiarly and talked · incoher-
ently; would get excited without cause, and frequently
cry; was often dejected, and would look wild out of his
eyes sometimes, and at others foolish; would run in doing
ordinary work, and exercised no judgment in accomplish-
ing what he undertook; had frequently claimed the Bible
gave him the right to kill his wife; and the physicians
testified that there was a depression in his skull which
caused a derangement in the action of the brain. Nine
nonexpert witnesses and three physicians expressed the
opinion that he was insane. As bearing on this defense,
the court instructed the jury that: "In considering this
question of the insanity of the accused, you are to bear in
mind that the presumption of the law is that he was sane.
The burden is upon him to establish that at the time of
the killing of said Ida Marie Thiele, if he did kill her, he
was in such a state of insanity as will excuse the act.
And if the evidence goes no further than to show that
such a state of mind was possible or even probable, it is
not sufficient. It must be sufficient to overcome the legal
presumption of sanity, and satisfy you by a fair prepond-
erance of the evidence that he was not sane. The defense
of insanity is one which should be thoughtfully, thoroughly,
and dispassionately considered by you. You should in-
dulge in no prejudice against it, but you should give it a
candid and fair consideration, with an honest design to
reach the very truth of the matter." That the burden
was upon the defendant to establish his insanity at the

time of the killing by a preponderance of the evidence is
1. INSANITY: not questioned, nor could it be in this state.
burden of
proof.    *State v. Felter*, 32 Iowa, 49; *State v. Geddis*,
42 Iowa, 264; *State v. Bruce*, 48 Iowa, 530; *State v. Trout*,
74 Iowa, 545; *State v. Mewherter*, 46 Iowa, 88; *State v.
Van Tassel*, 103 Iowa, 11; *State v. Robbins*, 109 Iowa, 650.

The critcism of the instruction is (1) that in effect it
treats the presumption of sanity as having some weight
as evidence, and (2) that the degree of proof exacted is
more than a mere preponderance of the evidence.    A sim-
ilar instruction, from which the objectionable part of this
may have been copied, was condemned · in *State v. Jones*,
64 Iowa, 349.    Indeed, a comparison of this with the
instruction in the *Jones Case* indicates that the very defect
pointed out in the latter is here emphasized by omitting
"merely" before "probable."    When analyzed, what
might the jury reasonably have understood from the lang-
uage used?    If the evidence made it appear that the
defendant might possibly have been insane, this would
not entitle him to an acquittal, for, at most, only a reason-
able doubt would thereby be raised as to his sanity.    This
was correct under the decisions of this state, though con-
trary to the conclusion reached by the Supreme Court of
the United States in *Davis v. U. S.*, 160 U. S. 469 (16 Sup.
Ct. Rep. 353, 40 L. Ed. 499), a case of first impression.

In saying he was not entitled to an acquittal if the
evidence proved him probably insane, there was error.
The existence of disease in the brain of a living being is
2. INSANITY: in- seldom the subject of demonstrated or direct
struction.    proof.    Of necessity, reliance must be placed
on outward manifestations, and from these the inference
drawn as to the condition of the brain.    The conduct and
speech of a party are not always the true index of mental
capacity or incapacity.    Cases of feigned insanity · are not
infrequent, and about all courts are able to do in most
cases is to speak from the evidence as to the probability or

improbability of the accused having been insane at the time under investigation.    By saying insanity is probable is meant, as understood in common parlance and from the definition of lexicographers, that there is more evidence of insanity than against it, or better reason to believe the defendant insane than to suppose him sane.    *State v. Jones, supra*;    *State v. Trout*, 74 Iowa, 545;    *Kelch v. State*, 55 Ohio St. 146 (45 N. E. Rep. 6, 39 L. R. A. 737, 60 Am. St. Rep. 680.)

But the court in effect told the jurors that, even if it were made to appear probable that defendant was insane, he must be held accountable for his act.    And more, that such probability would not alone overcome the presumption of sanity.    The defendant must have gone still farther and introduced evidence to overcome this presumption, and then, in addition thereto, satisfy the jury of his insanity by a fair preponderance of the evidence.    Even if the presumption were to be accorded some probative force rather than treated as a mere rule concerning the burden of proof, it ought not to be offset in this way against evidence establishing the probability of defendant's insanity.    Sanity is the normal condition, and the presumption that it exists goes no farther than the assumption, for the purposes of the trial, that the accused is not different in this respect from other men.    The law does not undertake to measure the precise amount of evidence which, when undisputed, will rebut this assumption and justify the conclusion that a person is abnormal, save that it must be enough to convince the understanding. But the jury are not to be told that the presumption is of no consequence in weighing evidence, or, as was requested by appellant, that it is not "to weigh the presumption of defendant's sanity against any measurable amount of evidence of insanity"; for an appreciable weight of evidence is required to establish the existence of an abnormal condition of the mind.    Not until the evidence indicates that

3. Same.

the existence of insanity is probable, that is, is such as to render this conclusion more reasonable than a contrary inference, has the assumption that the party under investigation was in a normal state been overcome.   The particular vice of the instruction is that it negatives this proposition, and tells the jury that even evidence producing this effect does not overcome the bare presumption of sanity; that still more must be introduced to accomplish this, and, in addition thereto, the defense established by a preponderance of evidence.   The error is too manifest to require further elucidation.   But the state urges that the fault found is purely technical, and not likely to have prejudiced the defendant.   Our learned predecessors twenty years ago were unable to agree upon this point, or upon a proper construction of a like instruction in the *Jones Case.*   This fact alone is sufficient warrant for thinking that the jurors might have construed the charge logically and as it was written.

There is nothing in the presumption of sanity demanding special explanation.   Any juror of ordinary comprehension understands what is meant by it, and it is sufficient if, in simple and direct language, the jury are advised upon which side is the burden of proof, and the quantum exacted by the law.   Because of the error in this instruction, the judgment is REVERSED and the cause REMANDED.