UNITED STATES, Appellee

v

FRANKLIN YOUNG, Airman Third Class,
U. S. Air Force, Appellant

12 USCMA 211, 30 CMR 211

No. 14,569

Decided March 10, 1961

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore*.

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Merlin W. Baker*.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of six specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority disapproved the findings of guilty with respect to three of the specifications but found the sentence adjudged appropriate. The board of review affirmed, and we granted accused's petition on the issue whether sufficient evidence appears in the record to corroborate his voluntary confession of guilt.

The accused was employed at the Sheppard Air Force Base Commissary. His duties included acting as cashier. As such, he operated a cash register, on the tape of which the price of each item purchased was recorded together with the total cost of the order. If, after the total was rung up on the register, the customer found that he did not have sufficient funds to pay for his order, a credit slip was filled out by the cashier. It was signed by the customer and the cashier and approved either by the store manager or his assistant. A sufficient amount of groceries was then deducted from the customer's order so that its total cost was brought within the limits of his available cash. The difference between the cash paid by the customer and the total recorded on the register tape was entered on the credit slip. The slip was then placed in the register and served to explain the difference between the actual amount of cash in the drawer and the total amount recorded in the machine for the day's operation.

The same procedure was used to balance the register's tape and the cash on hand in the drawer when the cashier erroneously rang up too large a sum for the order or when a refund was made to a customer for the return of beverage containers.

With respect to the specifications in question, the Government adduced evidence that three such credit slips, bearing the accused's name in the blocks provided for "Signature of Cashier" and the purported signatures of three different customers, had been prepared and later approved by appropriate store personnel. These three slips indicate, as reasons for their preparation, one

212

instance of striking the wrong key on the register and two occasions on which the customer possessed insufficient funds to pay for his order.

Each of the three customers whose credit slip transactions with the commissary were thus apparently established testified that they neither made nor authorized the making of their purported signatures on the vouchers. Further, none had participated in the transactions which the instruments apparently recorded. Indeed, one witness had never entered the commissary. All three, however, were acquainted with the accused. There was also testimony to the effect that the store manager and his assistant did not always approve the slips as they were prepared but, to save time, reviewed them in bulk on some later occasion, affixing their signatures at that time. Over appropriate objection, accused's voluntary statements were received in evidence.

It is settled military law that, in order to sustain findings of guilty, an accused's confession must be corroborated by substantial, independent evidence tending to establish the existence of each element of the offense charged. United States v Isenberg, 2 USCMA 349, 8 CMR 149; United States v Landrum, 4 USCMA 707, 16 CMR 281; United States v Villasenor, 6 USCMA 3, 19 CMR 129; United States v Mims, 8 USCMA 316, 24 CMR 126; United States v McFerrin, 11 USCMA 31, 28 CMR 255. This proof may be circumstantial or direct. United States v Petty, 3 USCMA 87, 11 CMR 87. The question before us, therefore, is simply whether the evidence *aliunde* accused's statements meets this standard. We are certain that it does.

Three credit slips, reflecting correction in the register's cash drawer in the amounts alleged in the various specifications, were demonstrated to be false and fraudulent by the testimony of the "customers" to whom they purportedly appertained. That they were vouchers from the accused's drawer is shown by his name appearing on each under the heading "Signature of Cashier" and the admittedly genuine approving endorsements of the manager or his assistant. The function of these vouchers was to cause the actual monies in the drawer to balance with the amount reflected on the register tapes. Thus, in a sense, they were the equivalent of cash and, when they were shown to be false, the amount in the register and the total shown on the tape no longer balanced. Accordingly, a shortage of money was established in the accused's register with respect to each such transaction.

Much is made of the proposition that the prosecution failed to prove any shortage to be reflected in the balance sheets of the commissary as a whole. This argument misses the point. The cash register tapes, credit slips, and drawer cash formed the basis of the commissary's cash records. If the false slips were initially accepted as accurate credits, and they apparently were, the store's books would naturally reflect no cash loss. Thus, their tenor is understandable. Moreover, testimony in the record establishes that, in keeping with modern commercial practices, a margin of loss amounting to one-half of one per cent of the commissary's average monthly business was permitted to be written off. In this case, that amounted to approximately $1,150.00. As the amounts involved are, respectively, only $8.49, $0.61, and $1.00, it is clear why the shortages were at first not reflected in the over-all records.

In United States v Leal, 7 USCMA 15, 21 CMR 141, we pointed out, at page 19, that corroboration of a confession in a larceny case, "usually takes the form of testimony that property of a given value is missing, under circumstances indicating that it was probably stolen." See also United States v Evans, 1 USCMA 207, 2 CMR 113. Except that the loss here was shown circumstantially, precisely that proof was offered in this case. Accused's register was shown to be short, and the use of fraudulent vouchers to conceal that deficiency is a circumstance indicative of the probability of theft. We must therefore conclude that the

proof *aliunde* the confession was sufficient substantially to establish the commission of the three specifications of larceny charged.

In reaching this decision, it should be remembered that we deal with probabilities rather than proof █ beyond a reasonable doubt in determining whether a confession is sufficiently corroborated. United States v Leal, supra; United States v Isenberg, supra. We do not, however, approve of the presentation of minimal evidence to establish the necessary *corpus delicti*. See United States v McCrary, 1 USCMA 1, 7, 1 CMR 1. Whether the prosecution in this case had other evidence to present does not appear, and no criticism of its tactics is intended. The point which we desire to emphasize is simply that many of the close questions of sufficiency of proof either to corroborate or to establish guilt might be avoided if all relevant and material evidence is made available in the record. Appellate review is an expensive and time-consuming process. It may be expedited by the elimination of short cuts at the trial level. Trial personnel will find that harm seldom results from the adduction of all available proof, for the extension of the original proceedings and record will be more than offset by the elimination of issues at this level.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.