UNITED STATES, Appellee

v

EDWARD E. ANDERSON, Airman Third Class,
U. S. Air Force, Appellant

14 USCMA 627, 34 CMR 407

No. 17,479

June 26, 1964

*Lieutenant Colonel Andrew S. Horton* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*
*Major James Taylor, Jr.*, argued the cause for Appellee, United States. With him on the brief was *Colonel Emánuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Accused was convicted by general court-martial on a charge of having committed a lascivious act upon a female under sixteen years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for three years. The convening authority reduced the confinement to one year but otherwise affirmed, and an Air Force board of review affirmed the findings and sentence as reduced.

We granted the accused's petition for review to consider several assignments of error all of which deal, in the main, with the sufficiency of the evidence to allow consideration of the accused's pretrial confession.

The record reflects that on the day of the alleged offense, the accused was at the home of Staff Sergeant G. for the purpose of going fishing. Also present were Mrs. G., their son Michael, and the three and one-half-year-old victim, a neighbor who frequently visited at the G.'s residence. After digging for worms, along with the two children, accused appeared in the kitchen and asked Mrs. G.'s permission to wash up. Mrs. G. was aware that someone was with accused at this time but she did not turn around. After some period of time she observed her son but the victim was not with him. She instructed him to look in the bedroom. After ascertaining she was not in the bedroom, Mrs. G. called to her from the kitchen. When no answer was received, she proceeded outside of the house where she again called several times. Still receiving no answer, she asked her husband to call the accused. Although he called to the accused, at her request, there was no answer. While standing in the backyard, she finally observed the victim and the accused come out of the backdoor together. Mrs. G. estimated that about four or five minutes elapsed from the time that accused asked to wash his hands until he appeared at the backdoor.

When she first observed the victim and the accused emerging from the backdoor, Mrs. G. realized that the victim was tugging at the crotch of her corduroy pants and the accused had perspiration across his forehead. Other than the fact that she was tugging at her pants, the victim appeared normal; she was not crying, she did not appear to be excited or proud, nor did she have a strange look on her face. However, based upon the number of times she had called the victim and received no response, the victim's action in tugging at her pants, and the appearance of the accused, Mrs. G. surmised something unusual had happened to the victim. Upon questioning, the victim related to her that she had been in the bathroom. She then asked the accused if he would like a glass of tea to which she received a negative reply. As the two men left to go fishing, Mrs. G. asked the victim "if she had washed her hands while she was in the bathroom, and she said, 'Yes.' And I said, 'Did he,' meaning Airman Anderson, touch her in any way." At this point defense counsel objected to testimony as to the victim's reply on the ground that it would be hearsay and would not qualify as a spontaneous exclamation. Trial counsel conceded the hearsay nature of the reply but contended it qualified as a spontaneous exclamation exception to the hearsay rule. When the law officer overruled the defense objection, Mrs. G. testified that the victim replied, " 'He put his seat to my seat.' "

Thereupon Mrs. G. told her husband, who had not yet departed, what she thought had transpired. He at first ordered the accused to leave and then told him to come into the house. In the

living room, under additional questioning by Mrs. G., the victim repeated her statement. She also did so in the bedroom where Mrs. G. conducted further inquiry away from her husband and the accused and where she examined the victim. From her examination, Mrs. G. determined that the victim was quite normal, was not scratched or bruised, and that there was no irritation in the genital area of the body.

Staff Sergeant G. testified that while Mrs. G. was examining the victim in the bedroom, he and accused talked about the matter in the living room. In response to his questions, accused denied molesting the victim. Thereupon, they proceeded to the home of the victim's mother where she was again physically examined and where she repeated the statement previously testified to by Mrs. G.

At her mother's suggestion, the victim was taken to the base hospital and examined with negative results. It was the mother's testimony which revealed that by "seat" the victim meant the front and back area of her private parts.

While at the victim's home, Staff Sergeant G. continued questioning the accused. He became angry at accused's continued denials, removed his belt and began beating the accused. He admitted also striking the accused twice with his hand.

When the accused was interviewed at the base hospital by an air policeman, he had a bump on the back of his head and a small bump on the side of his face. He was in pajamas and had been admitted to the hospital as a patient. He orally admitted molesting the victim and the matter was referred to the Office of Special Investigations for further inquiry. At that time the accused "was nervous, physically." Shortly thereafter the accused repeated his story to the OSI and subsequently signed a statement incorporating his admission of guilt in the manner charged in the specification.

At time of trial and throughout appellate review, defense counsel had objected to the testimony of the air policeman as to accused's oral admissions of guilt and to the admission of accused's pretrial confession on the ground there was insufficient independent admissible evidence in the record to permit the court to consider this evidence.

It is a well-established rule and a sound principle of law that no person shall be convicted of crime upon his confession unless and until the same is corroborated. Proof of the *corpus delicti* is fundamental in every criminal prosecution and its existence must be shown, just as are other elements, by legal and competent evidence. We thoroughly discussed this rule and its application in military law in United States v Smith, 13 USCMA 105, 32 CMR 105. In the case at bar, the only evidence, *aliunde* the confessions, that accused might have committed the charged offense is found in the testimony of Mrs. G. In response to her specific inquiry as to whether the accused had touched her in any way, the victim replied to Mrs. G., "He put his seat to my seat." Whether this statement, if testified to by the victim, would be sufficient to permit consideration by the court members of the accused's confession need not detain us for we find that the testimony of Mrs. G., relative thereto, was legally inadmissible.

It is clear that Mrs. G.'s testimony was hearsay, and hence inadmissible, unless it could be classed within one of the recognized exceptions to the historic rule excluding evidence of this character—in this case, a spontaneous exclamation. We reviewed this concept in United States v Mounts, 1 USCMA 114, 2 CMR 20, and again in United States v Anderson, 10 USCMA 200, 27 CMR 274, and in United States v Knight, 12 USCMA 229, 30 CMR 229, all of which cases also involved charges of sexual misconduct with very young children, and affirmed the principle that a statement will qualify as a spontaneous exclamation only where there is "some independent evidence of the exciting, startling, or surprising event which circumstantially guarantees the offered hearsay utterance." See also Brown v United States, 152

F2d 138 (CA DC Cir) (1945), and Jones v United States, 231 F2d 244 (CA DC Cir) (1956).

In the case at bar, the only independent evidence offered on this issue was the testimony of Mrs. ■ G. that she had received no reply to her numerous calls for the victim and that as the latter emerged through the backdoor she was tugging at the crotch of her pants. This gave rise to Mrs. G.'s suspicions. Mrs. G. herself admitted that the victim appeared normal, was not crying, did not appear excited or proud, nor did she have a strange look on her face. Also, subsequent physical examination of the victim by Mrs. G., by the victim's mother, and by a physician at the base hospital revealed she was quite normal, was not scratched or bruised, and there was no irritation in the genital area of the body.

The fact that the accused and the victim were in the house or even in the bathroom together[1] and emerged from the house at the same time would under the circumstances of this case hardly qualify as a startling event. Nor would the accused's perspiration be sufficient for this purpose, for it is logically explained by the fact that he had just finished digging for fishing worms and had washed his hands in the bathroom, the window of which was covered by a piece of plastic apparently used as a type of storm window.

In short, we find no evidence which would meet the requirement necessary to qualify Mrs. G.'s testimony on this issue as competent evidence. Accordingly, that portion of her testimony which was hearsay was inadmissible. United States v Mounts and United States v Anderson, both supra.

Inasmuch as the victim did not testify, there is in this record no evidence other than the accused's oral and written ■ confessions that the offense had probably been committed by someone. Since an accused cannot legally be convicted upon his own uncorroborated confession or admission and since other confessions or admissions of the accused are not such corroborative evidence (United States v Beverly, 14 USCMA 468, 34 CMR 248; United States v Smith, supra; Manual for Courts-Martial, United States, 1951, paragraph 140a), we necessarily hold that the remaining evidence in this case was legally insufficient. The findings of guilty must, accordingly, be set aside.

For the reasons set forth herein, the decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force for action not inconsistent with this opinion. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.

---

[1] It is noted that no one searched for the victim anywhere else in the house except in one bedroom where Michael was dispatched and in the kitchen where Mrs. G. was working.