UNITED STATES, Appellee

v

BILLY G. SNEARLEY, Airman Third Class,
U. S. Air Force, Appellant

15 USCMA 462, 35 CMR 434

*Lieutenant Colonel Joseph B. McMullin* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman.*
*Colonel Emanuel Lewis* argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial at Randolph Air Force Base, Texas, convicted the accused of two specifications alleging he set fire to an auto, with the intent to defraud an insurance company, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. It imposed a sentence which includes a bad-conduct discharge. On this appeal, the accused contends the independent evidence of each element of the offense is not sufficient to justify consideration of his pretrial confession.

A confession must be corroborated by independent evidence tending to establish the probable existence of each element of the offense charged. United States v Anderson, 14 USCMA 627, 629, 34 CMR 407; United States v Young, 12 USCMA 211, 213, 30 CMR 211. Probability, however, is not certainty; nor is it guilt beyond a reasonable doubt. Neither is it mere suspicion. Rather, probability is the likelihood of existence, Webster's Third New International Dictionary, page 1806; Black's Law Dictionary, 4th ed, page 1364. When the quantum of probative evidence in favor of the existence of an alleged fact exceeds the aggregate of the evidence indicating its nonexistence, probability of the fact's existence is established. See State v Jones, 64 Iowa 349, 20 NW 470, 472 (1884). Necessarily, probability must be predicated upon the evidence in each case. In assessing the evidence, circumstantial, as well as direct, evidence may be considered. United States v Young, supra; United States v Fioco, 10 USCMA 198, 27 CMR 272. Inferences which may reasonably be drawn from matters in evidence must also be weighed in the balance. And all the evidence and inferences must be considered "from the standpoint most favorable to the Government." United States v Britton, 13 USCMA 499, 502, 33 CMR 31. Tested by these standards, the evidence in this record of trial is sufficient to show the probability of each element of the offense charged in the specifications.

About 10:30 p.m., on August 28, 1964, John Maxwell, City Marshal of Universal City, Texas, his deputy, and officers from the Bexar County Sheriff's Office, extinguished a fire under the hood of a 1958 Mercury, bearing Texas License Plates UK 5558. The car was at Farm Market Road 1518, just north of Highway 90 east. Shortly after-

ward, Fire Department personnel arrived, and "rechecked" the burned area. Marshal Maxwell was certain the fire was completely out. The accused was present at the scene, and he informed Maxwell that the car was his. Maxwell left the area to get a wrecker. Less than two hours later, the car again came to his attention. It was then in an areaway outside Bryson's Garage off Pat Booker Road in Universal City. Again, the car was afire. This time, it was "burning quite furiously."

According to Marshal Maxwell, who in eighteen years of police work had had special training at the "police academy" and practical experience in the investigation of automobile fires, the second fire was definitely of incendiary origin. He testified that the upholstery in the car could not have burned with the intensity he observed, unless it had had "some other assistance." His opinion as to the deliberate nature of the fire was shared by Dalton Carr, Fire Chief of Universal City. Carr had had about twenty-two years of fire-fighting experience, and had helped extinguish the fire.

The fire was first seen by Rudy Ramirez, who lived across the street from the area adjoining Bryson's Garage. Minutes before, he had noticed an auto stop on his street. Two persons had gotten out; and gone toward the areaway beside Bryson's Garage. The auto then proceeded down the street, turned at the corner and parked about twenty-five feet from Pat Booker Road. Shortly thereafter, one or two persons got into the auto, and it drove off. A few minutes later, Ramirez saw the car ablaze. An investigation of the area led to the discovery of a can of lighter fluid about fifty feet from the front of the burned car. It was at a place along the route persons traversing the area, as described by Ramirez, would probably have taken.

Some hours after the second fire was extinguished, Marshal Maxwell made another inspection of the car. He testified to certain conditions that he found as to the carburetor and gas line. These conditions led him to conclude that the first fire under the hood of the car had also been deliberately set. It was established at trial that a policy of insurance had been issued to cover the car against loss by fire.

As a result of their investigations, the Universal City police arrested the accused on a charge of arson. They confined him in the county jail. In the early afternoon of August 29th, he was interrogated by an investigator from the Sheriff's office. After he was advised of his right to remain silent, and of the fact that whatever he said could "be used against . . . [him] in court," the accused admitted that, with the assistance of some friends, he had set both fires in the expectation that payment of the fire insurance would enable him to "get out from under the car payments."

Appellate defense counsel concede, and the concession is fully supported by the record of trial, that the independent evidence is sufficient to show the second fire was probably set willfully and maliciously, as charged. However, it is contended that Marshal Maxwell's testimony of his observations of the gas line and carburetor does not exclude the likelihood that the conditions resulted from "normal operation" of the car, or from the carelessness of a service mechanic. The argument implicitly requires judicial notice that "normal" operation of an auto can cause the connection between the gas line and the carburetor to come loose, at the place and in the manner observed by Maxwell; or, alternatively, that if the connection was left loose by a mechanic, the car would still be operable. We are not at all sure that these matters are so commonly known as to be proper subjects of judicial notice. See United States v Rowe, 13 USCMA 302, 314, 32 CMR 302. Assuming, *arguendo*, that Maxwell's testimony is itself insufficient to show the first fire had probably been deliberately and maliciously set, rather than accidentally caused, his testimony is not, as the accused contends, the "only evidence" on the point. The second fire must also be considered.

Indisputably, the second fire was of incendiary origin. It was started less than two hours after the first. An act later in time to that charged can go "far in coloring" the character of the prior, connected act. United States v Salisbury, 14 USCMA 171, 175, 33 CMR 383. True, the second fire does not completely exclude the possibility that the conditions found by Maxwell may have resulted from accidental means, but its incendiary nature corroborates Maxwell's conclusion that the first fire was also deliberately and maliciously set. "Acts of misconduct prior or subsequent to that charged," we have said, "are admissible to show a plan or design." United States v Dickenson, 6 USCMA 438, 462, 20 CMR 154.

A second principal challenge to the sufficiency of the corroborative evidence deals with the intent to defraud the insurance company. The evidence of this intent is said to be "completely nonexistent." The contention is founded upon two particulars.

First, the accused maintains that the evidence shows affirmatively that "no claim has ever been made under the policy." Evidence of the filing of a claim is relevant to the intent to defraud. See United States v Fuller, 9 USCMA 143, 25 CMR 405. Logically, the failure to assert a ▮▮▮▮▮▮▮ ▮ claim, especially if there is a substantial interval of time between the fire and the charge of misconduct, may indeed be indicative of the absence of an intent to defraud the insurance company. Such failure, however, does not necessarily exclude the existence of the intent, especially when, as in this case, the accused is arrested very soon after the fire, and there is little or no opportunity for anyone to file a claim for the fire loss. The absence of a claim for the loss, therefore, is not so overriding a circumstance as to require the conclusion that the record excludes probability of an intent to defraud.

The second aspect of the accused's contention of the insufficiency of the evidence of the required intent is based on the idea that the accused was "without knowledge . . . that the property was insured." Evidence was admitted, without objection by the defense, that on August 18, 1964, Standard Casualty Company issued a policy of insurance to "Elmo G. Snearly," of Porter, Texas. The policy covered various risks for a 1958 Mercury automobile, bearing Texas License Plates UK 5558. Elmo G. Snearley is the accused's father, but there is no independent evidence in the record to that effect. However, the record does show that Marshal Maxwell was informed by the accused that he was the owner of the car. The statement was made at the time of the first fire, when there was no indication that any wrong had been committed. Under the circumstances of its making, the statement constituted evidence of ownership, not merely another incriminating statement by the accused, and is, therefore, part of the independent evidence. See United States v Villasenor, 6 USCMA 3, 19 CMR 129. It may reasonably be inferred that the owner of a car knows whether or not the car is insured against certain risks. The inference is strengthened here by the correspondence between the license plate numbers and the make and year of the accused's car with those items of description listed in the policy of insurance. These matters would not ordinarily be known to someone in a town distant from that in which the car was operated.[1] It is at least inferable that the information was provided by the owner. The inference is strengthened by the correspondence in surname between the insured and the accused. All these circumstances lead to the conclusion that the accused probably knew the car was insured against loss by fire.

Apart from his confession, no direct evidence of the accused's intent to defraud the insurance company appears

---

[1] As to the right of the court-martial at Randolph Air Force Base, Texas, to consider the distance between Universal City, Texas, and Porter, Texas, see United States v McCrary, 1 USCMA 1, 8, 1 CMR 1.

in the record of trial. The state of mind that accompanies a particular act is not often susceptible of direct proof. It may, however, be established by circumstantial evidence. The evidence *aliunde* the confession establishes with probability that the accused had a property interest in the car; that it was insured with his knowledge; and that it was willfully and maliciously set afire. The natural inference from these facts is that the act was committed with the intent to defraud the insurance company. Speaking of the reasonableness of this inference, the Supreme Court of California has said:

> "It is further claimed that no evidence was introduced tending to show that the act of burning by defendant was done with intent to defraud the insurance company. Having shown that the building was the property of the defendant, that he burned it, and that at such time it was insured against loss by fire, the jury was fully justified, from the foregoing facts, in finding as a fact that defendant burned the building with intent to defraud the insurer." [People v Vasalo, 120 Cal 168, 52 Pac 305 (1898).]

We have examined the other points set out in appellate defense counsel's exhaustive brief. Separate discussion of them is unnecessary. We are satisfied that the independent evidence sufficiently shows the probable existence of each element of the offense charged, and, therefore, justifies consideration of the accused's pretrial confession.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.