UNITED STATES, Appellee

v

JOSEPH P. SCHOENBERG, Private, U. S. Army, Appellant

16 USCMA 425, 37 CMR 45

No. 19,566

December 9, 1966

Captain Anthony F. Cilluffo argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent, Captain Frank J. Martin, Jr., and Captain James A. Buttry.

Captain Louren R. Wood argued the cause for Appellee, United States. With him on the brief were Colonel Peter S. Wondolowski and Lieutenant Colonel Francis M. Cooper.

QUINN, Chief Judge:

A general court-martial convened at Fort Campbell, Kentucky, convicted the accused of four offenses in violation of the Uniform Code of Military Justice, and sentenced him to a dishonorable discharge, confinement at hard labor for ten years, and accessory penalties. On intermediate review by the convening authority and the board of review, the findings of guilty were affirmed, but the sentence was modified to reduce the period of confinement to five years.

Two of the offenses are described by the parties as that of "peeping tom." They were alleged as violations of Article 134 of the Uniform Code, supra, 10 USC § 934. The third offense is assault with intent to commit rape, also alleged as a violation of Article 134. The fourth offense is larceny of personal property, in violation of Article 121, Code, supra, 10 USC § 921. At trial, a written pretrial statement by the accused was received in evidence. In it, the accused admitted he had committed each of the offenses. On this appeal, the accused contends, among other things, that the *corpus delicti* rule, which requires that independent evidence corroborate the commission of the offense, has not been satisfied as to the "peeping tom" and aggravated assault offenses.

One of the cardinal principles of American criminal law is that a conviction cannot be based ▄▄▄▄▄ ▄ upon a confession alone. United States v Smith, 13 USCMA 105, 112, 32 CMR 105; United States v Anderson, 14 USCMA 627, 629, 34 CMR 407. Other evidence in the record of trial must corroborate the confession. This Court has divided over the nature of the corroborative evidence. Although I still favor the rule generally prevailing in the Federal civilian courts, the military rule, as delineated in the Manual for Courts-Martial and given effect by this Court, requires corroboration of the confession "by independent evidence tending to establish the probable existence of each element of the offense

charged." United States v Snearley, 15 USCMA 462, 463, 35 CMR 434; United States v Weeks, 15 USCMA 583, 36 CMR 81. This exacting standard demands close examination of the evidence *aliunde* the confession.

The independent evidence relating to the "peeping tom" offenses is scanty. In one instance, it consists of testimony to the effect that on a Sunday morning some military policemen, engaged in "policing up . . . trash" in the back of premises 1037-B, Drennan Park, Fort Campbell, pointed out to the occupant that a kitchen chair was outside the house, under a bedroom window. They asked the occupant if the chair belonged to him. It did not. He testified he had not seen anyone "move" the chair to his premises. In the second instance, the occupant of 1016, Drennan Park, testified that Criminal Investigations Detachment agents called at his home on the same morning. They pointed out to him that a "very light" fir picnic table was on the outside of his house, under a bedroom window on the north side. The witness owned the table. He had last seen it about 10:30 the previous evening, when it was in its regular place on the southwest side of the house. He did not know who had moved it. While outside the house, the witness found an empty pint whisky bottle on his lawn, about twenty feet from the window.

Government counsel contend that the "coincidence of two neighbors finding makeshift viewing platforms under their bedroom windows on the same morning can hardly be ignored" in assessing the sufficiency of the independent evidence. The argument attributes a significance to the physical location of the two houses which is not justified by the facts. The house numbers indicate they were on opposite sides of the street, and at least a fair distance apart. As to the alleged use of the articles as "viewing platforms," the differences in their nature and ownership do not imply a probable unity of function. In one case,

**427**

the table belonged to the occupant of the premises and was regularly out-of-doors; in the other, the chair had never before been seen by the occupant and he did not see anyone bring it on the property. There is no evidence that either or both bore footprints; and there is no evidence of any depression in the ground to indicate that either article had supported a comparatively heavy weight. Stretching the evidence to the limit, the most it indicates is a suspicion that the chair and table may have been used to enable a person to look into a bedroom window. Suspicion, however, is not probability, and does not satisfy the requirements of the *corpus delicti* rule. United States v Britton, 13 USCMA 499, 33 CMR 31; United States v Anderson, supra. We conclude, therefore, there is insufficient independent evidence to corroborate the confession as to the "peeping tom" offenses.[2]

Turning to the evidence *aliunde* the confession to support the findings of guilty of assault with intent to rape, appellate defense counsel concede it establishes an assault upon the person of the youthful victim. They insist, however, it does not indicate, with the requisite degree of probability, that the accused's purpose was to rape the youngster.

The victim of the assault testified at trial. Under questioning by defense counsel, she acknowledged the accused touched only her face and forehead. That circumstance does not preclude the existence of the intent to rape. Cf. United States v Parker, 6 USCMA 274, 19 CMR 400. It appears the accused was apprehended in the area of the assault. When taken into custody, his trouser front was "completely unzipped," and his privates were exposed to view. This condition of the accused so soon after flight from the immediate scene of the crime strongly indicates that sexual satisfaction was foremost in his mind. True, approxi-mately forty-five minutes elapsed between the assault and the accused's apprehension, and it is possible he experienced a change of thought and desire between the two events. However, reasonable persons could fairly conclude that sexual desire dominated the accused's thought at the time of the assault as much as it did at the time of his apprehension. The remaining question is whether the accused intended to satisfy his desire by forcible intercourse with the victim of his assault.

Appellate defense counsel contend that the youthfulness of the victim argues strongly against the idea of forcible intercourse. Whatever merit the argument may have as to an extremely young female, it is unpersuasive in this case. The child's age does not directly appear in the record of trial, but she testified at the trial, and photographs of her face were admitted into evidence. Her testimony shows she attended school and possessed considerable ability to speak fluently and descriptively. Her apparent size and maturity, therefore, do not make it likely that she would be spurned as a potential victim.

Flight at the first sign of resistance to his sexually inspired assault, may indicate the assailant does not intend to effect intercourse by force. Baber v United States, 324 F2d 390 (CA DC Cir) (1963). Here, the accused fled the scene very soon after his initial attack, but it does not appear he desisted in his assault at the first moment of resistance. The assault took place at about 2:15 a.m. The victim was in a tent set up in her backyard, with her sister and some playmates. She testified she was seized under her chin and dragged partially out of the tent. Her assailant then began to hit her in the face. She screamed, but the assailant did not stop hitting her. He did so only when her sister shone the beam of a flashlight upon him. The accused's flight under these circumstances does not negate the prob-

---

[2] Our conclusion as to the insufficiency of the corroborative evidence makes it unnecessary to consider the accused's further contention that the allegations in each "peeping tom" specification are insufficient to allege an offense under the Uniform Code of Military Justice.

ability that he intended to achieve forcible intercourse with the victim of his assault.

Appellate defense counsel further maintain that the assault "could have taken place for any number of reasons, none of which would relate to rape." They have not, however, supplied us with any reason. Taking into consideration all the evidence, there is ample reason to believe the assault was committed with intent to rape. The attack was upon a young girl in her sleeping quarters. It was made in the early morning hours. The method of attack was reasonably calculated to speedily render her unable to re-sist. It is reasonably inferable from the evidence that at the time of the attack, the assailant's trouser front was probably "completely unzipped" and his privates were probably exposed. We are satisfied that the independent evidence establishes the probable existence of each element of the offense to which the accused confessed. See United States v Fioco, 10 USCMA 198, 27 CMR 272.

At trial, the law officer instructed on assault and battery as a lesser included offense within the charge of assault with intent to commit rape. He did not instruct on indecent assault as a lesser offense. The accused now contends the omission constitutes prejudicial error. See United States v Hobbs, 7 USCMA 693, 23 CMR 157. The record reflects no mere oversight. Rather, it affirmatively appears that trial counsel and the accused's lawyers were "in agreement" that the only lesser offense on which an instruction should be given was assault and battery. Defense counsel had good reason to agree on that limitation.

There was little need for the court-martial to scrutinize the evidence for an indication of the accused's intention at the time of the assault. He admitted he intended to rape the girl; and he was certainly best qualified to speak on that point. What might have been equivocal, if left to inference, was made certain by the accused himself. In this critical respect, the in-

stant case is different from United States v Hobbs, supra, which is heavily relied upon by the accused. We are satisfied that on this evidence the law officer was not required to instruct on indecent assault as a lesser included offense.

In his last assignment of error, the accused contends the staff judge advocate misadvised the convening authority as to the larceny offense by informing him that "a person in possession of recently stolen property may be *presumed* to be the thief." (Emphasis supplied.) The accused attacks the validity of this advice on several grounds. We need not, however, consider the particulars. The accused's conviction of the larceny charge did not rest exclusively upon the inference resulting from possession of stolen property. See United States v Ocamb, 12 USCMA 492, 31 CMR 78. He voluntarily confessed that he stole the property. Consequently, assuming the advice was erroneous, it was not prejudicial. See United States v Owens, 15 USCMA 591, 36 CMR 89.

Earlier we indicated that the findings of guilty as to the "peeping tom" specifications must be set aside. We, therefore, reverse the decision of the board of review as to those findings and dismiss specifications 1 and 2 of Charge I. Dismissal of these charges requires us to consider their effect upon the sentence. At trial, the law officer instructed the court members that the maximum penalty for each of the offenses was confinement at hard labor for one month. Since assault with intent to commit rape carries a punishment extending to confinement at hard labor for twenty years, it appears unlikely that the court members were in any way influenced by the "peeping tom" charges. However, these offenses are included in the staff judge advocate's recommendation. Apparently, they had some effect upon his conclusion that the sentence adjudged by the court-martial was "not inappropriately severe." Under the circumstances, we think it better to return the record of trial to the board

**429**

of review for reconsideration of the sentence, in the light of this opinion. See United States v Wilson, 12 USCMA 165, 30 CMR 165; cf. United States v Helfrick, 9 USCMA 221, 25 CMR 483. It is so ordered.

Judges FERGUSON and KILDAY concur.